[No. 15947.   Department One.   April 5, 1921.]

RHODA McCLAIN, *Appellant*, v. EUGENE McCLAIN, *Respondent*.[1]

DIVORCE (100)—CHILDREN—AWARD OF CUSTODY.  The welfare of the child of divorced parents being the paramount consideration in awarding its custody, an award to the father, who is better able to give it proper care and education, is proper, although he may have violated an order of court decreeing custody of the child alternately to each parent until further order of the court.

ON REHEARING EN BANC.

DIVORCE (100) — CHILDREN — AWARD OF CUSTODY — WELFARE OF CHILD.  Where the child's welfare and best interests will not necessarily be promoted thereby, a modification of a divorce decree of a court of a sister state, awarding the custody alternately to each parent, will be denied, where it appears that the father violated the decree by taking the child from the jurisdiction and concealing his whereabouts for years, and, together with a stepmother, refuse to teach the child to respect or love his natural mother; since in that respect the child is not being well treated.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered January 5, 1920, upon findings in favor of the defendant, in an action for the custody of a minor child, tried to the court. Affirmed.

*Poe & Falknor, Judson F. Falknor,* and *Hughes & Adams,* for appellant.

*Herman Howe,* for respondent.

PER CURIAM.—This proceeding was instituted in August, 1919, in the superior court of Chelan county by the appellant, Rhoda McClain, against the respondent, Eugene McClain, to obtain for herself the custody of their minor son, who was then in the custody of the

[1]Reported in 197 Pac. 5; 202 Pac. 173.

respondent. After a somewhat extended hearing, the child was awarded to the respondent, and this appeal resulted.

The record discloses that the appellant and respondent intermarried in the state of Texas on August 27, 1903. The child in controversy was born some time in the year 1907. The parties were divorced at the suit of the appellant, by a decree rendered in a district court of the state of Texas on March 31, 1913. In this decree the custody of the child was awarded alternately to the parties, month by month, until the further order of the court. The terms of the decree were substantially complied with by the parties until the month of August, 1914, when the respondent, having the custody of the child for that month, left the state of Texas with the child, going into the state of Oregon. He resided at different places in the state of Oregon until the year 1916, when he came into this state, taking up his residence in Chelan county. Before leaving the state of Texas, he did not inform the appellant of his intention so to do. Nor did he while in the state of Oregon, or while in this state, inform the appellant of his whereabouts, nor did he communicate with any person in the state of Texas from whom the appellant could learn the fact. Nor was the appellant able to learn of his whereabouts until shortly before the institution of these proceedings, although during all of the intervening years she made diligent, but perhaps not very well directed, efforts so to do.

Under these facts, were the controversy solely between the appellant and respondent, we would have no hesitancy in directing that the child be turned over to the custody of the appellant. The respondent not only violated the decree of the court under which he held the custody of the child, but he has willfully and

needlessly caused the appellant much grievous sorrow. But however much we may desire to right the wrong, it should not be righted at the expense of the welfare of the child. His welfare is now the paramount consideration, and the record is not convincing that he will be as well situated or as well guarded and cared for, if the custody is given to the appellant, as he will be if his custody is left with the respondent.

The evidence abundantly shows that the child has been well cared for and reared since he has been in the sole custody of his father. He has at all times had a good home where the surrounding moral influences have been of the best. He has been kept in the public schools, and is as well advanced therein as the average boy of his age. He has been taught, and is being taught, frugality and industry and it is shown that he has profited by his teachings. His father is so situated as to give him a college education, and there is every prospect that if he is left with the father he will grow into an upright man and useful citizen. Moreover, the boy is approaching his fourteenth year, and is of that age when his own desires concerning his custody are worthy of consideration. He was put on the witness stand and expressed a strong desire to remain with his father.

With regard to the mother, it is enough to say that she is dependent upon her own labor for her support. She has a position, which with certain other work which she follows, brings her an income of about one hundred twenty-five dollars a month. Her duties keep her engaged from eight o'clock in the morning until six o'clock in the evening. She lives at her mother's home. The mother has passed her seventy-first year and is not in the best of health. If the boy is awarded to his

mother, it is plain that for much of his time he will be left to his own resources, and courts have but to examine their own records to know of the dangers surrounding a boy of his age when placed in such a situation.

It must not be inferred from what we have recited concerning the father's conduct in this particular matter that he is without character or reputation. On the contrary, he holds a responsible position, involving trust and confidence, and his reputation, aside from the reflection that may be cast upon it by his conduct in this transaction, is shown to be honorable and above reproach.

We conclude, therefore, that the trial judge did not err in its conclusions, and the judgment will be affirmed.

## ON REHEARING.

[*En Banc.* December 5, 1921.]

MAIN, J.—This proceeding was instituted by Rhoda McClain, plaintiff, against the defendant, Eugene McClain, to obtain the custody of their minor son, who was then in the custody of the defendant. The trial resulted in a judgment declining to disturb the custody of the child, and the plaintiff appeals.

In the Department opinion, the judgment of the trial court was sustained. Thereafter a petition for rehearing was granted and the cause was heard *En Banc*. The majority of the court are now of the opinion that the judgment of the trial court should not be sustained.

The respondent and appellant were married in August, 1903, in the state of Texas, and thereafter a son was born, who was christened Eugene Parnell McClain, Parnell being the mother's maiden name. On the 31st day of March, 1913, the appellant and respondent were divorced by a decree of the district court of

McLennan county, Texas. At this time the son and only child was about the age of five years. In the decree the court awarded the custody of the boy to the father and mother for alternate months. The parties at this time were living in different towns in Texas, the mother at Waco and the father at Hamilton, which places were approximately seventy miles apart. At the end of each month the boy was to be delivered by the one then having his custody to the other. This arrangement continued for a period of about sixteen or seventeen months, or until the latter part of August, 1914. The boy had been in the custody of his father that month, and during the latter days of the month the father took him and departed from the state. The boy not being sent to the mother on the first of September as provided by the decree, she telephoned to Hamilton and learned that the father had gone with him. After this she caused a show cause order to be granted by the court which had granted the divorce, directed to the father, requiring him to show cause why he should not be judged in contempt of court for failing to comply with its decree.

The mother, appellant, began a search for the boy which continued for a period of approximately four years. She first advertised and offered a reward. Finally, she learned that the respondent and the boy were in the state of Oregon. She then addressed a letter to every bank in that state and received a reply from one stating that the respondent had been there but he had gone to Wenatchee, Washington. The appellant then immediately came to Wenatchee and instituted this proceeding, with the result above indicated.

At the time of the trial, the boy was twelve years of age. After the respondent left Texas he first went to Roseburg, Oregon, then to Pendleton, then to Sea-

side and back to Roseburg, from which latter place
he came to Wenatchee, this state. While at Seaside
he married the present Mrs McClain, the boy's step-
mother. At the time of the trial, the parties were
living in Leavenworth, where the respondent was man-
ager of a general store and received compensation
in the sum of $200 per month. Since coming to the
state of Washington the respondent and his present
wife have adopted a child, a little girl. They lived in
a comfortable house in Leavenworth which they rented
furnished. The appellant lived at Waco, Texas, with
her mother, who was an elderly lady and who owned
her own home. The appellant was employed as a
stenographer and auditor in a large department store
at that place. She had an income of approximately
$150 per month.

The evidence shows that the boy has a good home
with his father and stepmother, is well treated and
well cared for, his stepmother having an affection for
the child which he reciprocates. The evidence also
shows that, if the boy were in the custody of his
mother, he would have a good home with good environ-
ment and would be well cared for. The father of the
boy is a man of upright character, and the boy's
mother is a good woman. The father's conduct has
been exemplary, except in the manner in which he left
the state of Texas with the boy and the negative
manner, at least, in which he has taught the boy to
forget his natural mother and cease to love and respect
her. It is true that the respondent testified that, since
he left the state of Texas, he had made no particular
efforts to conceal his whereabouts, but the evidence
abundantly shows that he was only discovered by the
appellant after a most diligent search and the expendi-
ture of several hundred dollars. The stepmother of
the boy is a good woman. It thus appears that in

whichever place the boy shall be he will be well cared for, and that the environment will be good. In cases of this kind, as has been many times said by the court, the paramount consideration is the welfare of the child involved, and we do not lose sight of this fact in disposing of this case.

The question then arises, whether it would be harmful to the boy at this time to decline to disturb the custody as fixed by the court of the state of Texas and give him an opportunity to again get acquainted with his mother and learn to love and respect her. It is perfectly apparent that, if he remains with his father and stepmother, his memory of his natural mother will be obliterated and he will grow up without love or respect for her. It cannot be said that the respondent and his present wife affirmatively and actively teach the boy not to love and respect his natural mother, but their course of conduct is so ordered that such is and will continue to be the result. The respondent, when asked the direct question whether, if the custody of the boy remained with him, he would teach him to love and respect his mother, replied: "If I were given the custody of the boy at this time I will not train him to love and respect his mother. I won't have any instructions from her in that way. I trained him to obey at home, as to her I have nothing to do with it."

After the departure from the state of Texas, the father caused the boy's name to be changed from that of Eugene Parnell McClain to Eugene Rufus McClain, thus changing his middle name, which had been his mother's maiden name. The stepmother declined to say that she thought it was her duty to encourage the boy to remember his natural mother. The boy stated: "I don't know whether I want to grow up to love and respect my mother or not." Here is a fairly

good index as to the effect of the negative teaching
of the father and stepmother. The boy is entitled to
be brought up to remember, love and respect his
natural mother even though his parents have been
divorced. The father, in taking the boy from Texas
in the manner he did and concealing him for a long
period, acted in a most heartless and cruel manner
toward the appellant and likewise did the boy a great
wrong. It will not be harmful to the boy to decline
to disturb the custody of him as fixed by the court of
Texas when granting the decree of divorce. The
father gave as a reason for leaving in the manner he
did that he wanted to get the boy away from the
environment that he was in and he thought it was for
the best interest of the boy. This furnished no excuse
for the course of conduct pursued. Notwithstanding
the father's course is to be condemned, yet if we were
of the opinion that it were for the best interest of the
boy to leave him with the father and stepmother we
would so order. In being deprived of the right to re-
member, love and respect his natural mother the boy
is not being well treated.

The judgment will be reversed, and the cause re-
manded with direction to the superior court to enter
an order declining to disturb the custody as fixed by
the Texas court, and directing that the boy be delivered
into the possession of the appellant. It is so ordered.

PARKER, C. J., BRIDGES, MACKINTOSH, MITCHELL, and
HOVEY, JJ., concur.

HOLCOMB, J., concurs in the result.