[No. 26913. Department One. April 5, 1938.]

*In the Matter of the Petition of* PETE E. F. BURNS *for a Writ of Habeas Corpus.*[1]

[1]Reported in 77 P. (2d) 1025.

294

*Bogle, Bogle & Gates* and *Claude E. Wakefield,* for appellant.

*J. P. Patten,* for respondent.

HOLCOMB, J.—This suit involves a petition for a writ of *habeas corpus* by respondent to effect the return of Pete E. F. Burns, Jr., to the state of California. This appeal is taken from a judgment granting the writ.

The petition alleges that respondent and his minor son are residents of the city of Los Angeles, California, that respondent and Sarah Fitzhugh Burns Dawson were legally divorced by the superior court of the state of California, an interlocutory order of divorce having been granted and filed therein on January 6, 1930, and that a final judgment of divorce was granted and filed January 12, 1931; that Sarah Dawson, formerly Sarah Fitzhugh Burns, having been remarried, is now domiciled at 715 McGilvra boulevard, in Seattle, Washington; that the interlocutory order and final judgment of divorce provided that neither party thereto should take the minor child, Pete E. F. Burns, Jr., out of California without the written consent of the other party being first had and obtained, or permission legally granted after full hearing by the superior court of California for Los Angeles county, and the provisions therein relating to the custody of the child should be adhered to.

The complaint alleged further that, on May 20, 1937, Sarah Dawson, then a resident of the state of California, represented to respondent that she desired to take the minor child to Seattle on a visit for a period of three

months; that petitioner gave written permission to Sarah Dawson on May 20, 1937, to take the minor child out of the state of California to Seattle for a period of three months and no longer; that Sarah Dawson has failed and neglected, since August 20, 1937, to return the minor child to California, although numerous demands have been made upon her; nor had she obtained permission of the superior court of California to take this minor child out of that state; that this minor child is being restrained of his liberty by Sarah Dawson at the above mentioned address in Seattle to the detriment of his welfare and education; that this restraint is illegal, contrary to, and in defiance of, the orders and judgment of the superior court of California. Respondent therefore prayed that an order be entered discharging this minor child from the illegal custody of Sarah Dawson and directing that he be returned to his residence in California.

Appellant answered this petition, admitting respondent is a resident of California; that she secured a final decree of divorce in the superior court of Los Angeles county, California, on January 12, 1931; that she came to Seattle, Washington, on May 20, 1937; that Pete E. F. Burns, Jr., is residing at the above designated address; and denied all the other material allegations of the petition. By way of affirmative defense and cross-complaint, appellant alleged this minor child was brought to Seattle pursuant to a written agreement signed by respondent, wherein it was specifically agreed that this child could be brought to the state of Washington to reside therein for an indefinite period of time; that this minor child and appellant are residents of and domiciled in the state of Washington; that appellant and her present husband, Don Dawson, are now and have been for some time maintaining a home for Pete E. F. Burns, Jr., in Seattle; that the

minor child is now in the McGilvray public school in Seattle; that respondent, the father of this child, is and has been addicted to the use of intoxicating liquor and on frequent occasions becomes intoxicated while in company of the minor child; and therefore appellant prayed that the court enter an order decreeing the sole custody and control of the minor child to appellant.

Respondent replied to the affirmative defense and cross-complaint, denying that it was specifically agreed in writing that the child could be brought into the state of Washington to reside therein for an indefinite period of time, denying that the minor child has been domiciled in this state since May 20, 1937, and denying the remaining allegations of the affirmative defense and cross-complaint.

The trial court entered judgment granting the writ and ordered that the minor child be returned to California. Appellant was given temporary custody of the child pending appeal to this court.

It is urged that the trial court erred in granting the writ because the lower court did not give effect to the written consent to remove the child from California, and in holding the superior court did not have jurisdiction to grant appellant a new decree and custody of the child by reason of the changed conditions, that is, change of the child's domicile, coupled with the fact that respondent is not a fit person to have the custody of the child.

In order to determine under what terms and conditions the minor child may be removed from the state of California, we first consider the relevant portions of the orders entered by the superior court of Los Angeles county relating to the dissolution of the marital relationship of the parties.

June 25, 1936, Sarah Fitzhugh Burns and Pete E. F.

Burns entered into an agreement by which a property settlement was effected and provision was made for the education and custody of the minor child, the sole issue of the marriage. June 26, 1936, an order was entered in the superior court for Los Angeles county, California, giving effect to this agreement, and the custody of this child was provided for in accordance with the agreement of the parties as follows:

"For approximately nine (9) months of each year, the said child shall board and room at and attend a military or boarding school to be selected by mutual agreement of the parties hereto; all expenses of said child in the boarding school, or military school, including his tuition, his board,. room and clothing and all other matters incidental to his maintenance, support and education shall be borne by defendant and the plaintiff herein shall not be required to pay any part thereof. All bills for said child's care, maintenance and education shall be sent by said military or boarding school directly to defendant herein. During summer, when the child is on vacation, plaintiff shall have said child one-half of the summer and defendant shall have said child the other one-half of the summer, the exact times during each summer when each party herein shall have the child shall be arranged between themselves, and each party herein shall be fair and reasonble in the matter of the fixing the said times of summer custody, the health of the child and the general welfare and happiness of the child to transcend the wishes of the parties herein."

Paragraph 2 (e) of this order provides:

"In the event that either of the parties herein remarries a person other than the other party herein, either party may petition the superior court of the state of California for a decree or order amending all decrees and orders with respect to the care, custody, maintenance and control of the minor child of the parties herein."

Although the order entered by the California court on June 26, 1936, is silent in regard to the removal of

the child from that state, we find nothing therein which modifies the provision in the interlocutory and . final decree of divorce entered by that court, which provides in part:

"That plaintiff be and she is hereby awarded and granted the custody and control of the minor child of plaintiff and defendant, Peter E. F. Burns, Jr., subject, however, to the following conditions and orders: *that neither party shall at any time during the minority of said child take said child without the boundaries of the state of California without the written consent of the other party first obtained, or permission regularly granted after full hearing by this court;* that defendant shall have the right of visiting the said child a reasonable length of time a reasonable number of times each and every week, and a further right to take and keep said child at his home over the week-end a reasonable number of times during each and every calendar month; that when said child shall become of school age, defendant shall have the further right to keep and maintain said child at his home throughout the vacation periods, provided that if said child shall be away at boarding school during the school year, in that event said child shall spend one-half of the vacation time with the plaintiff and one-half with defendant; that in the event of remarriage by the plaintiff to any person other than the defendant, either party shall have the right to petition the court for an order modifying or changing the right to the custody of said minor child." (Italics ours.)

Under this decree, appellant was granted the custody of the child, but neither appellant nor respondent were to remove the child from the state without the written consent of the other party or permission granted by the superior court of Los Angeles county, "after a full hearing." Respondent was given the right to have the companionship of the child at certain stated intervals.

No order having been entered by the superior court of Los Angeles county with respect to the removal of

the child, we must determine whether a valid written consent was made by respondent acquiescing in the removal of the child by appellant to this state.

The written agreement relating to the removal of the child from California reads:

"It is agreed between the two undersigned that it is all right for Sarah F. Dawson to take Peter Burns out of the state *on a business trip for an indefinite period* and that school expenses will be mailed to Los Angeles to be paid by his father.

"PETE E. F. BURNS
O. H. BURNS
SARAH F. DAWSON"

(Italics ours.)

This agreement was executed on May 20, 1937, was written in the handwriting of appellant, and signed by appellant, respondent, and O. H. Burns, a brother of respondent, at the home of this brother.

Appellant testified that respondent was inebriated almost incessantly, and that he was drunk when he signed the written consent. Respondent testified he was not drunk at the time of the execution of this agreement, although one observing him would get the impression that he was drunk, but that in fact his mind was warped by an overindulgence in bromides. Respondent also testified that he was not in full possession of his faculties when he signed this agreement, and that he would not have signed this agreement if he had been in full possession of his faculties.

Respondent's testimony relative to what he thought the agreement purported to accomplish is somewhat unsatisfactory. He testified that he did not know the contents of the agreement when it was executed and was later informed concerning the same by his brother and his wife. Respondent testified that he did not read the instrument, but that it was read to him because he was not competent to read or digest it. He testified further that he remembered appellant's being

present at his brother's home, and that respondent's brother asked respondent if he knew what he was signing and he answered in the affirmative. He also testified that, at the time he signed this instrument, he thought he was consenting to a removal of the child for a ninety-day period which would expire on August 20, 1937. Appellant urges that, since respondent thought he was signing an agreement for a three months stay only, respondent must necessarily have been mentally capable of signing the agreement.

If one is completely intoxicated at the time of the execution of a contract, he is placed on essentially the same footing as one who is insane at such time, and thus has not the requisite mental capacity to make a contract. There are, however, varying degrees of intoxication, and mere intoxication *per se* does not render a contract executed while in such a condition inoperative. The cases generally hold that mere undue excitement or intellectual limitations caused by liquor, which prevent one from giving a proposed contract all the consideration he might otherwise give it, are not sufficient to render it voidable. To render such a contract voidable the intoxication must be so deep and excessive as to deprive one of his powers of reason, memory, and judgment, and to have impaired his faculties to such an extent as to render him incapable of appreciating the consequences of his acts.

It is unnecessary here to determine the exact degree of inebriety of respondent at the time he signed the consent. It may be doubtful whether respondent's understanding was so nebulous or his reason so dethroned as to render him *non compos mentis* so as to entitle him to avoid this agreement. Such state, if true, is not controlling here.

Disregarding the defense of intoxication as not necessary to determine, the agreement did not contemplate

a stay of the child outside of the state of California for a period of indefinite duration. The nature of the contemplated business trip referred to in the agreement is not disclosed, but business trips do not last indefinitely. The agreement connotes consent to a temporary sojourn only. Appellant testified her present husband, Don Dawson, was transferred to Seattle from Los Angeles by a certain oil company in whose employ he now is. Both appellant and her husband testified they are settled in Seattle permanently, subject of course to the exigencies of being transferred, and do not intend to return to California.

Since the contemplated business trip has ended, we must determine if the child should be removed to California.

Appellant urges that, by reason of changed conditions, that is, her remarriage and the change of her own domicile and that of the minor child, coupled with the fact that respondent is not a fit person to have the custody of the child, this court should determine for itself, independent of the California decree, the custody of the child.

Appellant argues, citing authorities, that, in view of the present condition of married women, the domicile of the minor child must be regarded as being with the mother after her remarriage if the child continues to make its home with the mother. Our attention is directed to statutes adopted in a number of states, including Washington, Rem. Rev. Stat., § 6907 [P. C. § 1423], where the father and mother have equal rights and are constituted joint guardians of their minor children, and when that is the case, if the parents have separate domiciles, a child takes the domicile of the parent with whom it lives in fact.

In view of the fact that consent to the removal of the child was given only for a temporary period, that

is, for a business trip, the child is still domiciled in the state of California. *Motichka v. Rollands,* 144 Wash. 565, 258 Pac. 333. The child had been in this jurisdiction a relatively short time when its return to California was demanded by respondent.

The promotion of the welfare of the child is the paramount consideration. *McClain v. McClain,* 115 Wash. 237, 197 Pac. 5, 202 Pac. 173; *In re Penner,* 161 Wash. 479, 297 Pac. 757.

It will be remembered that the order of the California court provided that, if either the father or mother of the child remarried, either party might petition the California court for a redetermination of the custody of the child.

The case of *In re Groves,* 109 Wash. 112, 186 Pac. 300, is not controlling here, because in that case we refused to recognize an *ex parte* order of the Colorado court as binding upon this court because the father permitted and acquiesced in the removal of the child from Colorado for nearly a year and the modification order was made *ex parte.*

In *McClain v. McClain, supra,* we refused to disturb the custody of a child as fixed by a Texas court when the father removed a minor child from the state of Texas to another state, because we deemed it to be in consonance with the best interests of the child that his custody should remain as determined by the Texas court.

In *Motichka v. Rollands, supra,* which involved merely a temporary sojourn in this state and not a permanent change of domicile, we said:

"It is apparent that Eva Irene was not sent to respondent at Leavenworth in this state with a view of becoming a resident of, or becoming domiciled in, this state; that is, it is apparent that appellant never had any such intention and never evidenced to respondent or her mother, or anyone else, any such intention. It is

also apparent that Eva Irene never had a residence or domicile in this state or in any other state than Montana. . . .

"It may be assumed that the general sovereign guardianship of the state is such that it extends over the persons of all minors residing or domiciled within its borders, even to the extent of not being bound by a judgment of a sister state rendered with reference to the personal guardianship of a minor while a resident and domiciled in such sister state. It may also be assumed that the general sovereign guardianship of the state is such that it extends to the temporary protection of all non-resident minors, while temporarily in the state. But no decision has come to our notice holding or suggesting that the courts of one state may permanently assume general guardianship over a minor temporarily sojourning in the state, who is a resident of, or has its domicile in, another state."

In *In re Penner, supra,* the mother, apparently dissatisfied with the ruling of the Montana court relative to the custody of the children, surreptitiously removed them to this state. We recognized therein that the welfare of the child is the supreme consideration, but concluded:

"The courts of other states are guided by this same principle in determining questions involving the custody of minors, and such courts are as well qualified to decide such questions as are the courts of this state."

It is noteworthy that, during the minority of children, the California court may make such further orders for the custody of such minor children as it deems advisable or may at any time modify or vacate the same.

Section 138 of the California Civil Code provides:

"In actions for divorce the court may, during the pendency of the action, or at the final hearing or at any time thereafter, during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of

such minor children as may seem necessary or proper, and may at any time modify or vacate the same." Chase, California Codes (1937).

Article IV, § 1, of the constitution of the United States prescribes:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. . . ."

While judgments of sister states relating to the custody of minor children are not binding upon this court, still we conclude that, in the instant case, the welfare of the minor child will be best served by giving effect to the decree of the California court relating to the custody of the child and by returning him to California.

Whether the changed conditions, occasioned by appellant's remarriage and change in domicile to this state, require a further modification of the terms of the interlocutory and final decree of divorce with respect to the removal of the child from California or of the order of June 26, 1936, in regard to the education and the right of the father to the companionship of the child at stated intervals, is a matter for the California court to decide. Being in possession of all of the facts, the California court can best determine the present fitness of the father with respect to the custody of the child and reexamine its award of the custody of the child, and inquire into the desirability of permitting the father to have the child at stated periods in the light of the changed conditions.

If we should not allow the California court, which originally had jurisdiction of the parties, to determine the custody of the child under the changed circumstances, we would encourage the taking of children from one jurisdiction to another, and thus invite interminable litigation over the custody of minor chil-

dren, and by thus placing the custody of minors in an inchoate condition would seriously interfere with the welfare of children.

Under the circumstances here shown the interlocutory decree of January, 1930, the final judgment of divorce of January 9, 1931, and the order of June 26, 1936, in the case of Burns v. Burns, No. 79279 in the superior court of Los Angeles county, California, relating to the education and custody of this child, shall be given full faith and credit until modified by that court, or unless a further change in circumstances or subsequent events require a different treatment.

Appellant is directed to return the minor child to California, and in accordance with the order of the California court to place him in the military school which he has already been attending or in a military or boarding school mutually agreed upon by appellant and respondent in California within ten days after the remittitur is filed with the trial court. Appellant is also hereby directed to accompany the child enroute from Seattle to such California school.

The judgment of the trial court in granting the writ is affirmed.

STEINERT, C. J., MAIN, BLAKE, and SIMPSON, JJ., concur.