(No. 6889.    April 30, 1941.)

CECIL W. ROOSMA, Appellant, v. ALBERTA ROOSMA MOOTS, Respondent.

[112 Pac. (2d) 1000.]

452

Anderson, Bowen & Anderson, for Appellant.

S. T. Lowe, for Respondent.

HOLDEN, J.—Appellant and respondent were married August 1, 1931, at Farmington, Utah, and shortly thereafter moved to Pocatello, Idaho. May 5, 1934, a daughter was born of said marriage and named Martha Jo. February 6, 1938, respondent left home, leaving a note reading: "Cecil sorry to leave but it's no go, don't worry about me I have a job and can take care of myself and baby. BERT. I'll write to mother." February 24, 1938, appellant filed a complaint for divorce in the district court for Power County, charging extreme cruelty. The case was tried April 9, 1938, respondent making no appearance. April 18, 1938, respondent married J. W. Moots. The decree divorcing the parties was signed April 29, 1938, and filed the next day. The court awarded the custody of the child, then about four years of age, jointly to appellant and the child's maternal grandmother, Mattie Dougherty, until the child reached the age of six years. Some time in the month of December, 1938, the grandmother, without the knowledge or approval of either the court or appellant, went to California, taking the child with her. From California she moved to Seattle, Washington, then to Yakima, Washington, where appellant located her and the child in the summer of 1940 and commenced proceedings to obtain the child's custody. The grandmother then returned with the child to Pocatello. Respondent also returned to Pocatello and July 6, 1940, filed a petition for modification of the decree seeking the joint control and custody of Martha Jo. August 6, 1940, appellant also filed a petition for modification of the decree whereby he sought the sole custody and control of the child. These

petitions were heard August 26, 1940. November 8, 1940, findings of fact and conclusions of law were filed and on the same day an order was made and entered denying both petitions and awarding the sole custody of Martha Jo to the grandmother "subject to the right of this court to enter an order, without notice to the said Mattie Dougherty or Alberta Roosma Moots, or either of them, providing that during the summer months of each year, when school is not in session that the said minor child may visit with her father, Cecil W. Roosma, either at Pocatello or at Nampa, Idaho, or at such other place or places as the court shall direct." The father, Cecil W. Roosma, filed notice of appeal from such order, and the mother, Alberta Roosma Moots, filed notice of an appeal from that part of the order denying her petition for the joint custody and control of the child, but did not cause a copy of the notice to be served upon Mattie Dougherty.

We will first discuss and dispose of appellant's motion to dismiss respondent's cross appeal. The motion presents two questions: first, is Mattie Dougherty an "adverse party" to this controversy within the meaning of Section 11-202, I. C. A., and secondly, is respondent "a party aggrieved" within the provisions of Section 11-103, I. C. A. Section 11-202, *supra*, provides:

"An appeal is taken by filing with the clerk of the court in which the judgment or order appealed from is entered, a notice stating the appeal from the same, or some specific part thereof, and serving a similar notice on the adverse party, or his attorney. . . . "

The term " 'adverse party,' as used in this section [R. S. 4808, new Section 11-202, *supra*], means any party who would be prejudicially affected by a reversal of the judgment, a party who has an interest in conflict with a reversal of the judgment." (*Nelson Bennett Co. v. Twin Falls Land & Water Co.*, 13 Ida. 767, 771, 92 Pac. 980; followed and adhered to in *Eldridge v. Dickerson*, 49 Ida. 636, 637, 290 Pac. 723; *Hutton v. Davis*, 56 Ida. 231, 233, 53 Pac. (2d) 345.) In the instant proceeding Mattie Dougherty was not a party, nor was she brought in by order or any process of the court, nor did she seek the custody of Martha Jo Roosma by petition or otherwise.

Hence, she would not be bound nor prejudicially affected by any order or judgment entered in the controversy. Mattie Dougherty was and is a stranger to this litigation. In the circumstances shown by the record the duty was imposed upon the trial court to select a suitable custodian —with but one object in view—to promote the welfare and safeguard the best interests of the child. In the discharge of that high duty the court gave the custody of its ward to the maternal grandmother, who thereby became simply an instrument of the court through and by which its duty must necessarily be discharged. Surely the mere appointment as custodian of a minor child could not make such custodian an "adverse party" within the meaning of Section 11-202, *supra.* In *Walker v. Jackson,* 48 Ida. 18, 25, 279 Pac. 293, we held that one who never appeared nor was brought into trial court was not an adverse party required to be served with notice of appeal under C. S. 7513 (now Section 11-202, *supra*), since not being a party to the action, one could not be affected by the proceedings, or by any reversal or modification of the judgment on appeal. To the same effect: *Eldridge v. Payette-Boise W. U. Assn.,* 48 Ida. 182, 185, 279 Pac. 713; *Sherman v. Nixon,* 36 Ida. 195, 209 Pac. 886; *Kissler v. Moss,* 26 Ida. 516, 144 Pac. 647.

Section 11-103, *supra,* provides:

"Any party aggrieved may appeal in the cases prescribed in this code...."

Here respondent filed a petition seeking the joint custody and control of her minor daughter. The court denied her petition. It must be conceded respondent was aggrieved by such decision. If a denial of all the relief one seeks does not bring a litigation within the statute, what in the name of common sense could? In the case of *In re Blades,* 59 Ida. 682, 684, 86 Pac. (2d) 737, we defined the term, "party aggrieved," as used in Section 11-103, *supra,* as any person injuriously affected by the judgment. Other cases to the same effect are: *State v. Eves,* 6 Ida. 144, 53 Pac. 543; *Washington County Abstract Co. v. Stewart,* 9 Ida. 376, 74 Pac. 955; *Oatman v. Hampton* (on rehearing), 43 Ida. 675, 256 Pac. 529. The motion to dismiss respondent's cross appeal is denied.

We turn now to a consideration of the merits of the main and cross appeals. The trial court found, upon ample evidence, the following facts:

That appellant

"is a fit and proper person for the care, custody and control of said minor child; that at all times since the entry of said decree of divorce, he has been and now is a resident of Pocatello, Idaho; that he is employed by the United States as a railway mail clerk, on the Union Pacific System, and runs between Pocatello, Idaho and Baker, Oregon; that he earns a salary of approximately $204.50 per month; that he is purchasing a home, under a contract, at Pocatello, Idaho, consisting of a first floor and basement; that the said Cecil W. Roosma, together with two other men live in the basement of said house, the first floor being rented: That by reason of the nature of his employment, he is required to be absent from his residence at Pocatello, at least half of the time, and that during such absence he would be personally unable to care for and protect the said child and she would have to be left with strangers, or persons whom he might employ to take care of her."

That Alberta Roosma had remarried and

"that her husband is employed as a vacuum cleaner salesman and makes about $250.00 per month, but his employment requires him to move from place to place and by reason thereof, the said Alberta Roosma Moots has no fixed permanent home, but travels from place to place with her husband, excepting such times as she remains at the residence of her mother, Mattie Dougherty. That the said Alberta Roosma Moots is a fit and proper person for the care, custody and control of the said minor child, Martha Jo Roosma."

"That during the trial of said cause, the said child was in court for a period of two days; that the court had an opportunity to and did closely observe the general appearance, demeanor and conduct of said child; that the said child has every appearance of being a normal, healthy, happy, well-trained and well brought-up child, and is greatly attached to her mother and grandmother."

That Mattie Dougherty has purchased, under a con-

tract of sale, a home in the City of Yakima, State of Washington, and

"that the said house is a four room frame house surrounded by a large yard, lawn and trees and is within approximately nine blocks of one of the principal schools of the City of Yakima, Washington; that the said Mattie Dougherty and Charlotte Dougherty are the only inhabitants of said home, excepting at such times as they are visited by Alberta Roosma Moots, and J. E. Moots, her husband. That there is ample room in the said home for rearing the said child, and that the environment thereof is conducive to the health, happiness and proper care and training of said minor child, Martha Jo Roosma."

"That it is to the advantage, welfare and best interests of said minor child, Martha Jo Roosma, that Mattie Dougherty be given the sole care, custody and control of said minor child, with the right of the plaintiff, Cecil W. Roosma, at reasonable times and places, to visit the said child, without any interference or obstruction by either Mattie Dougherty, Alberta Roosma Moots or Charlotte Dougherty, and that during the summer months of each year, when school is not in session, the plaintiff, Cecil W. Roosma, shall have the right to procure an order of this court, without notice to Alberta Roosma Moots or Mattie Dougherty, providing that the said child may visit with the plaintiff, Cecil W. Roosma, either in Pocatello or Nampa, Idaho, or at such other place, as the court shall direct."

As conclusions of law the court found "that by reason of the migratory nature of the employment of the husband of the defendant, Alberta Roosma Moots, and that the said defendant has no permanent residence," the petition of respondent should be denied; and "that by reason of the nature of the employment of the plaintiff, Cecil W. Roosma, and his inability to personally care for and protect the said minor child," his petition for the sole custody, care and control of the minor child should also be denied, and further, "that it is to the advantage, best interests and welfare of the said minor, Martha Jo Roosma, that Mattie Dougherty be given and granted the sole care, custody and control of the said minor child," and

"that the said Mattie Dougherty shall have the right to take the said child from the state of Idaho, to Yakima, Washington; that if and when the said Mattie Dougherty shall permanently remove the said minor child from Yakima, or any other place or places, she shall notify the judge of this court and the plaintiff, Cecil W. Roosma, of the change of her residence and address."

Appellant argues "it is presumed to be for the best interests of the child to be in the custody of its father where such father is a fit and proper person to have custody, rather than in that of a collateral relative, unless the contrary is shown by the evidence by reason of the father's unfitness or his abandonment of the child," citing *Piatt v. Piatt*, 32 Ida. 407, 184 Pac. 470. In the Piatt case, *supra*, this court held:

"In a divorce action, the custody of the children should be awarded to one or both of the parents, unless it be affirmatively shown that both parents are unfit to have such care or custody, *or that they are unable to properly maintain them and provide for their proper training and education.* . . . In the case of *Barnes v. Long*, 54 Or. 548, 21 Ann. Cas. 465, 104 P. 296, 25 L. R. A., N. S. 172, it is said: *'Of course, the court in the interest of the child may take it from the parents and make other provisions for it, but there must be some good cause for so doing.' "* (Italics ours.)

While the trial court, in the instant case, found the parents were each fit and proper to have the custody of this minor child, it will be observed it further found "by reason of the nature of his [appellant's] employment, he is required to be absent from his residence at Pocatello at least half of the time, and that during such absence he would be personally unable to care for and protect the said child and she would have to be left with strangers," in other words and in effect finding for that reason appellant was unable to properly care for, maintain and educate the child; and that because respondent moved from place to place by reason of the roving nature of her husband's employment, and having no permanent home, she too was not in a position to properly care for, maintain and educate the child, thus bringing the case at bar

within the rule approved in *Piatt v. Piatt, supra,* that upon good cause a court may take a child from its parents "and make other provisions for it."

It is well settled in this state that "in cases of this character" the welfare and best interest of a minor child "is the paramount consideration" and that the "child's welfare as a normal human being and future citizen is the polar star by which the court must be guided in awarding its custody." (*Kirkpatrick v. Kirkpatrick,* 52 Ida. 27, 10 Pac. (2d) 1057; *Krieger v. Krieger,* 59 Ida. 301, 81 Pac. (2d) 1081; *Sauvageau v. Sauvageau,* 59 Ida. 190, 81 Pac. (2d) 731; *Piatt v. Piatt, supra; Keyes v. Keyes,* 51 Ida. 670, 9 Pac. (2d) 804; *Cornelison v. Cornelison,* 53 Ida. 266, 23 Pac. (2d) 252.)

But it is earnestly insisted by appellant "the court erred in allowing said child to be removed from the State of Idaho and from without the jurisdiction of this court, which said order in effect prohibits this plaintiff-appellant from seeing or visiting his child, except at great expense and by traveling a great distance."

Section 31-705, I. C. A., provides:

"In an action for divorce the court may, before or after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same."

In construing this statute we have held that "the question as to the disposition of children . . . is in the first instance committed to the discretion of the trial court, and unless such discretion is abused, the judgment will not be disturbed." (*Olson v. Olson,* 47 Ida. 374, 379, 276 Pac. 34; *Kirkpatrick v. Kirkpatrick, supra; Donaldson v. Donaldson,* 31 Ida. 180, 185, 170 Pac. 94.) In the exercise of the jurisdiction conferred by Section 31-705, *supra,* the "child's welfare as a normal human being and future citizen is the polar star by which the court must be guided," as hereinbefore pointed out. Hence, if, in the sound, legal discretion of the trial court, the "child's welfare as a normal human being and future citizen" requires that permission be given the custodian to remove the child from the State of Idaho, it seems the court would

not only have the power to permit such removal, but that it would clearly be its duty to grant permission. In other words, the question as to whether a court may permit a child to be taken from this into another state, is, like any other question affecting the welfare and best interests of the child, vested in the sound legal discretion of the court. To illustrate: Suppose a child was afflicted with some malady, for instance, consumption, where its well-being demanded removal from this into another state—it would be unthinkable that the court could not permit its removal, and unless the court manifestly abused its discretion, its order would not be disturbed. Here the evidence fully sustains the award and the order granting permission to take the child out of the state.

But the propriety or wisdom of the courts of this state expressly granting permission to a custodian to take a child out of the state, thus jeopardizing effective control by the courts of this state, has been questioned. The general rule as to the extra-territorial effect given such decrees seems to be about as stated in the note in 116 A. L. R. 1299, at 1300:

"Many of the later cases give support to the rule stated in the earlier annotations that, except as fraud or want of jurisdiction may affect their validity, custody provisions of a divorce decree are to be given full effect in other states as to the right to custody under the circumstances existing when the decree was rendered." (See cases therein digested and *Ex parte Inman*, (Cal.) 89 Pac. (2d) 421; *Bourn v. Hinsey*, (Fla.) 183 So. 614; *Turnage v. Tyler*, (Miss.) 184 So. 52; *Hachez v. Hachez*, (N. J.) 1 Atl. (2d) 845; *Evans v. Taylor*, (Tex.) 128 S. W. (2d) 77; *Cousineau v. Cousineau*, (Ore.) 63 Pac. (2d) 897; *Drake v. Drake*, (Ga.) 1 S. E. (2d) 573; *Cusak v. Cusack*, (Tex.) 107 S. W. (2d) 1021; *Ex parte Medbury*, (Wash.) 73 Pac. (2d) 1340; *People v. Torrence*, (Colo.) 27 Pac. (2d) 1038; *Ex Parte Erving*, (N. J.) 157 Atl. 161; *Titcomb v. Superior Court, etc.*, (Cal.) 29 Pac. (2d) 206; *Parsley v. Parsley*, (La.) 180 So. 417; *Mallina v. Mallina*, 4 N. Y. S. (2d) 27; *Ex Parte Burns*, (Wash.) 77 Pac. (2d) 1025; *Bennett v. Bennett*, (Wis.) 280 N. W. 363.)

In *Bennett v. Bennett, supra,* the Wisconsin Supreme

Court, relying on the full faith and credit clause of the federal constitution, said the decree of the court in the original state was protected. And in *Ex Parte Burns, supra,* the Supreme Court of Washington, the state to which the child, Martha Jo, was permitted to be taken, held a California decree as the state of original jurisdiction, though not binding, would be recognized as to the then conditions affecting custody, which seems to be the limit generally recognized.

Therefore, it seems that the decrees of the courts of this state granting permission to a custodian to take a child out of the state, though not binding on sister states, would be recognized as to the conditions affecting custody existing at the time the decree was rendered.

The order is affirmed. No costs allowed.

Budge, C. J., and Givens, Morgan and Ailshie, JJ., concur.