**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 36746**

| | | |
|---|---|---|
| JASON ROGERS, | ) | |
| | ) | Boise, December 2010 Term |
| Plaintiff-Appellant, | ) | |
| | ) | 2011 Opinion No. 35 |
| v. | ) | |
| | ) | Filed: March 18, 2011 |
| HOUSEHOLD LIFE INSURANCE | ) | |
| COMPANY, | ) | Stephen Kenyon, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

The district court order granting summary judgment is affirmed.

Thomas, Williams & Park, LLP, Boise, for appellant. Daniel Williams argued.

Naylor & Hales, P.C., Boise, for respondent. Bruce Castleton argued.

_____

HORTON, Justice

This appeal arises from a claim for life insurance proceeds. The district court granted summary judgment in favor of Household Life Insurance Company (HLIC) on the grounds that Alan Rogers' life insurance contract was void because he was adjudicated incompetent before he entered the contract. Alan's son and guardian, Jason Rogers, argues that the contract was merely voidable, that as Alan's guardian he had the capacity to and did ratify the contract, and that the contract was thus enforceable. We affirm, but deny HLIC's request for attorney fees incurred on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Alan Rogers was diagnosed with Alzheimer's and dementia in 2003. Soon after, Alan's son Jason sought an adjudication that Alan was incapacitated. An order to that effect was entered on January 27, 2004. The letters appointing Jason as guardian and conservator for his father did not place any limitations on Jason's powers.

1

On May 15, 2007, Jason assisted his father in completing and submitting an online application for life insurance offered by HLIC. The application requested information regarding Alan's health, but did not specifically inquire as to whether Alan suffered from Alzheimer's or dementia. The completed application did not reveal that Alan was adjudicated to be incapacitated, nor did it reveal that Jason had been appointed as his father's guardian and conservator. That day, HLIC approved the application, the initial $447.20 premium was paid, and Alan Rogers' term life insurance policy with a face value of $250,000 took effect. Jason was the sole beneficiary of the policy.

Alan passed away on June 7, 2007. His death certificate lists the sole cause of his death as "dementia of the Alzheimer's type." Jason submitted a notice of claim to HLIC, seeking the $250,000 policy proceeds. HLIC conducted a medical-history verification, a routine procedure for claims arising within two years of a policy's inception. Several months later, HLIC informed Jason of its position that, because Alan had been adjudicated mentally incompetent prior to the May 15, 2007, application and effective date, the policy was void from its inception.

Jason brought suit against HLIC, alleging breach of contract and tortious bad faith. HLIC moved for summary judgment on the grounds that Alan Rogers was adjudicated mentally incapacitated prior to entering into the insurance contract and therefore the contract was void *ab initio*. Jason countered that a contract entered into by one adjudicated incompetent is not void, but rather is merely voidable at the election of the incompetent's guardian, and also that a guardian may ratify such a contract.

The district court granted summary judgment in favor of HLIC on the ground that Alan's adjudication of incompetence rendered the contract void and dismissed Jason's complaint. Jason timely appealed. HLIC requests attorney fees and costs on appeal under Idaho Code § 41-1839.

## II. STANDARD OF REVIEW

This Court reviews a district court's order granting summary judgment under the same standard used by the district court in its ruling on the motion for summary judgment. *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 307, 160 P.3d 743, 746 (2007). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court exercises free review over questions of law. *Cristo*, 144 Idaho at 307, 160 P.3d at 746.

2

## III. ANALYSIS

**A. Under Idaho Code § 32-108, one who is adjudicated incapacitated lacks the capacity to contract as a matter of law.**

Idaho Code § 32-108 provides as follows:

> After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor delegate any power or waive any right until his restoration to capacity. But a certificate from the medical superintendent or resident physician of the insane asylum to which such person may have been committed, showing that such person had been discharged therefrom cured and restored to reason, shall establish the presumption of legal capacity in such person from the time of such discharge.

Jason asserts that the statute's language that one adjudicated to be incapacitated "can make no conveyance or other contract" means that although such a person should not contract, if he or she does, the contract is merely voidable. HLIC responds that under the statute's plain language, the contracts of one who is adjudicated incompetent are void because the individual lacks all capacity to contract.

The language of I.C. § 32-108 does not, upon preliminary consideration, support Jason's position. Effectively, Jason argues that the statutory language that a person adjudicated to be incapacitated "can make no . . . contract" means that such a person may enter into a contract, while simultaneously retaining the ability to avoid the obligations imposed by the agreement. Nevertheless, when considering Jason's claim that the insurance contract in this case was merely voidable, rather than void *ab initio*, we consider the statutory framework relating to persons who suffer from impaired capacity and their ability to make decisions regarding the conduct of their lives. This is because "[i]t is a fundamental law of statutory construction that statutes that are *in pari materia* are to be construed together, to the end that the legislative intent will be given effect." *State v. Yager*, 139 Idaho 680, 689-90, 85 P.3d 656, 665-66 (2004) (citing *State v. Creech*, 105 Idaho 362, 367, 670 P.2d 463, 468 (1983)).

Idaho Code §§ 32-106 through 32-108 address the enforceability of contracts involving persons of unsound mind. If a person is "entirely without understanding," he "has no power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary for his support or the support of his family." I.C. § 32-106. A contract involving a party who is "not entirely without understanding" and has not been adjudicated to be incapacitated "is subject to rescission." I.C. § 32-107. In other words, prior to a judicial

3

determination of incapacity, such contracts are voidable. However, after a judicial determination of incapacity, "a person of unsound mind can make no conveyance or other contract, nor delegate any power or waive any right until his restoration to capacity." I.C. § 32-108. Comparing I.C. § 32-107 and I.C. § 32-108, it is evident that the legislature intended that contracts involving persons not adjudicated to be incapacitated are to be voidable and to declare that a person adjudicated to be incompetent is without the legal capacity to contract until that person has been "restored to reason."

A judicial determination of incapacity and appointment of a guardian is a proceeding in which a judge assesses the capacity and decision-making ability of an individual and determines whether he or she is generally and consistently incapable of caring for his or her personal needs and financial affairs. Several statutory definitions inform the magistrate court's determination of competency and, under the doctrine of *pari materia*, inform this Court's interpretation of the statutes at issue here.

First, an "incapacitated person" is one "who is impaired . . . to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person . . ." I.C. § 15-5-101(a). "Incapacity" is the legal disability of one "likely to suffer[] substantial harm due to an inability to provide for his personal needs for food, clothing, shelter, health care, or safety, or an inability to manage his or her property or financial affairs." I.C. § 15-5-101(a)(1). Further, "[i]solated instances of simple negligence or improvidence, lack of resources, or any act, occurrence, or statement . . . [that is] the product of an informed judgment[] shall not constitute evidence of inability to provide for personal needs or to manage property." I.C. § 15-5-101(a)(3). Rather, a judicial finding of incapacity must be supported by evidence of "acts or occurrences, or statements which strongly indicate imminent acts or occurrences . . . [that] occur within twelve (12) months prior to the filing of the petition for guardianship or conservatorship." I.C. § 15-5-101(a)(2). Thus, a judicial finding of incapacity and appointment of guardian must be supported by evidence of multiple events that demonstrate the individual's inability to care for his basic needs, property, and financial affairs, such that appointment of a guardian who is capable of making those decisions in his stead is justified.

These definitions support a plain reading of Idaho Code § 32-108, as does longstanding Idaho precedent. In 1925, this Court approvingly quoted the Colorado Supreme Court's statement that because one was adjudicated incompetent, her "contract and [] deed were

4

absolutely void. . . . 'To compromise a suit instituted to set aside such a void deed is to nullify the statute. It is by judicial decree to inject life and vitality into an instrument which the law imperatively prohibits as contrary to public policy.'" *Miles v. Johanson*, 40 Idaho 782, 787, 238 P. 291, 292 (1925) (quoting *Rohrer v. Darrow*, 182 P. 13, 15 (Colo. 1919)).

This Court recognizes the individual's interest in the right to contract, and in *Fleming v. Bithell* we held that a summary civil commitment proceeding, as then conducted, was "not a conclusive judicial determination of sanity or insanity, capacity or incapacity." 56 Idaho 261, 266, 52 P.2d 1099, 1101 (1935). Jason asserts that the policy considerations set forth in *Fleming* also apply in the context of proceedings for the appointment of a guardian, i.e., that guardianship proceedings are not conclusive judicial determinations of incapacity, because they are also short and often uncontested.

However, guardianship proceedings fall directly within the scope of those the legislature intended to be conclusive judicial determinations of incapacity. The magistrate judges handling probate matters have jurisdiction over incapacitated persons, I.C. § 15-1-301(3), and the general definitions of the Uniform Probate Code expressly refer to the guardianship provisions to define "incapacitated person," I.C. § 15-1-201(23) ("'Incapacitated person'" is as defined in section 15-5-101, Idaho Code."). In a guardianship proceeding, the trial court assesses whether an individual's acts and statements during the twelve preceding months strongly indicate the inability to maintain his or her self or property. I.C. § 15-5-101(a). If the individual has some ability to care for himself or herself, the court may craft a guardianship that corresponds with his or her capacity in a manner that "permit[s] [the] incapacitated person[] to participate as fully as possible in all decisions affecting them . . . [through] the form of guardianship that least interferes with legal capacity of a person to act in his own behalf." I.C. § 15-5-303(a). Thus, the court should "make appointive and other orders only to the extent necessitated by the incapacitated person's actual mental and adaptive limitations or other conditions warranting the procedure." I.C. § 15-5-304(a). This "limited guardianship" is accomplished by noting limitations within the letters of guardianship. I.C. § 15-5-304(c). Since the court is not only vested with this ability to limit a guardian's role, but is also charged with the responsibility "to encourage the development of maximum self-reliance and independence of the incapacitated person," I.C. § 15-5-304(a), a finding that one is incapacitated and a grant of unrestricted guardianship powers represents a finding that the ward lacks all capacity to make decisions and

5

take actions that protect his or her well-being. Thus, we conclude that the appointment of a guardian with full powers represents a finding that the ward lacks the capacity to contract as a matter of law.

Jason urges this Court to overrule *Miles v. Johanson* by holding that contracts of a person adjudicated incompetent are merely voidable, a position he supports with the assertion that upholding contracts that benefit an incapacitated person is in line with the protective purpose of Idaho Code §§ 32-106 through 32-108. As noted above, statutory construction is a question of law over which this Court exercises free review. *Yager*, 139 Idaho at 689, 85 P.3d at 665. Statutes are interpreted according to their plain and express meaning, and when they are unambiguous this Court gives effect to the legislature's clearly expressed intent. *Kootenai Hosp. Dist. v. Bonner Cnty. Bd. of Comm'rs*, 149 Idaho 290, ---, 233 P.3d 1212, 1215 (2010) (citing *St. Luke's Reg'l Med. Ctr., Ltd. v. Bd. of Comm'rs of Ada Cnty.*, 146 Idaho 753, 755, 203 P.3d 683, 685 (2009)).

This Court may not ignore or amend unambiguous statutes; rather, policy arguments for altering unambiguous statutes must be advanced before the legislature. Idaho Const., art. III, § 1; *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 313, 208 P.3d 289, 295 (2009). Further, where this Court has previously interpreted a statute, "the rule of stare decisis dictates that we follow [controlling precedent], unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990). Since the plain language of Idaho Code § 32-108 is unambiguous and Jason has failed to demonstrate that the *Miles* holding is unjust or manifestly wrong, this Court must give effect to the legislature's clearly expressed intent. According to the plain language of Idaho Code § 32-108, an adjudication that one is incapacitated is a determination that one lacks the capacity to contract as a matter of law. Thus, agreements entered into by such a person do not give rise to enforceable contracts, and the district court properly granted HLIC's motion for summary judgment.

**B. HLIC is not entitled to attorney fees on appeal because it failed to cite the specific subsection of Idaho Code entitling it to an award of fees.**

HLIC requests an award of attorney fees on appeal under Idaho Code § 41-1839, asserting that Jason's claims were pursued without any foundation in the law because of the plain

language of I.C. § 32-108 and longstanding Idaho precedent. A court may award attorney fees in any action involving a dispute arising from an insurance policy if it finds "that a case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 41-1839(4). Although Jason's claims may be supported to some extent by modern policy considerations that would be properly presented to the legislature, the existing statutory and case law on this issue has long been established. It thus would appear that an award to HLIC of fees is appropriate.

However, if a party claims "a statute provides authority for an award of attorney fees, the party must cite to the statute and, if applicable, the specific subsection of the statute upon which the party relies." *Bream v. Benscoter*, 139 Idaho 364, 369, 79 P.3d 723, 728 (2003) (citing *Appel v. LePage*, 135 Idaho 133, 138, 15 P.3d 1141, 1146 (2000)). HLIC failed to cite the specific subsection of Idaho Code § 41-1839 under which it believed itself entitled to an award of attorney fees and costs, and thus is not entitled to an award thereof.

## IV. CONCLUSION

We affirm the district court's order granting HLIC's motion for summary judgment and dismissing Jason Rogers' claims, and deny HLIC's request for attorney fees. Costs to respondent.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.

7