# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38109

| | | |
|---|---|---|
| KRYSTAL M. KINGHORN, f/k/a KRYSTAL M. BARRETT, | ) ) ) | |
| Plaintiff-Respondent, | ) ) | Boise, May 2012 Term |
| v. | ) ) | 2012 Opinion No. 117 |
| KELLY N. CLAY, an individual, | ) ) | Filed: August 9, 2012 |
| Defendant-Cross Defendant-Appellant, | ) ) | Stephen Kenyon, Clerk |
| and | ) ) | |
| BRP, INCORPORATED, | ) ) | |
| Defendant-Cross Claimant-Respondent, | ) ) | |
| and | ) ) | |
| BANK OF COMMERCE, | ) ) | |
| Defendant. | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Fremont County. Hon. Jon J. Shindurling, District Judge.

The appeal is <u>dismissed</u>.

Smith, Driscoll & Associates, Idaho Falls, for appellant. Douglas G. Bowen argued.

Stoel Rives, LLP, Boise, for respondent BRP Incorporated. W. Christopher Pooser argued.

_____

HORTON, Justice.

Krystal Kinghorn (Kinghorn) and Kelly Clay (Clay) agreed that Clay would co-sign for a loan for Kinghorn's benefit. In order to protect Clay in the event that Kinghorn defaulted on the loan, Kinghorn agreed to execute a quitclaim deed to real property that Clay could record if Kinghorn defaulted. When Kinghorn defaulted, Clay recorded the deed and conveyed the

1

property to BRP Incorporated (BRP). Kinghorn filed suit, and the district court unwound the conveyance, holding at summary judgment that the deed was a mortgage and that Kinghorn had a right to redeem the property. BRP filed and prevailed upon a cross-claim against Clay for breach of its warranty deed. BRP later petitioned for a writ of attachment.

The district court held that Kinghorn had not timely exercised her right to redeem and ordered Clay to foreclose the mortgage. Kinghorn and Clay stipulated that Kinghorn would purchase the property and that the court should perform an accounting and set off of their liabilities. The court found that a balance remained due to Clay, and entered judgment in his favor. Clay's attorney, Brian Smith (Smith), then moved to perfect an attorney's lien as to the judgment. Kinghorn deposited the amount due with the court, and after the court denied Smith's motion, the court awarded the deposited funds to BRP. Smith appeals the court's denial of the motion for lien, as well as the order for transfer of funds to BRP. We dismiss the appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A bank required that Kinghorn obtain a cosigner in order to obtain a loan of $20,000 in addition to pledging a mobile home and the real property located at Lot 15, Block 6, Buffalo River Estates Division No. 2 in Fremont County. Clay and Kinghorn reached an agreement under which Clay agreed to be the cosigner, and in exchange, Kinghorn agreed to make timely loan payments and to issue to Clay a quitclaim deed to the real property. Kinghorn agreed that if she defaulted and Clay was required to make any payments, Clay could immediately record the quitclaim deed to the property. Kinghorn and Clay co-signed for the loan. Kinghorn timely paid the bank for over a year, but on March 2, 2007, the bank notified Clay that Kinghorn had defaulted and that he was liable for the debt. Clay cured the default, paid the outstanding balance on the loan and recorded the quitclaim deed. He then sold the property to BRP.

Shortly thereafter, Kinghorn filed suit against Clay, BRP, and the bank, alleging (1) that Kinghorn had a right to redeem the property because the quitclaim deed to Clay was merely a mortgage, (2) constructive trust, (3) invalid transfer, (4) fraud, (5) breach of the covenant of good faith and fair dealing, and (6) ambiguous contract.[1]

The district court eventually entered an order on summary judgment, holding that the quitclaim deed to Clay was a mortgage and that, by conveying the property to BRP, Clay had violated Kinghorn's right of redemption. The court also held that questions of material fact

---

[1] It appears that the district court dismissed all of Kinghorn's claims against the bank.

2

remained as to whether BRP was a bona fide purchaser of the property. Finally, the court held that Clay was entitled to judgment as a matter of law with regard to Kinghorn's claims of fraud and ambiguous contract.

In response to Kinghorn's subsequent motion for partial summary judgment, the district court held as a matter of law that BRP was not a bona fide purchaser. The court simultaneously granted Clay's motion seeking reconsideration on the grounds that Kinghorn had failed to timely exercise her right of redemption and ordered Clay to conduct a foreclosure sale. The district court ordered BRP to convey the real property to Clay. BRP responded by filing a cross-claim against Clay, asserting breach of the warranty in the deed. BRP eventually sought summary judgment on that claim, which the court granted.

Meanwhile, Clay and Kinghorn entered into negotiations and filed with the district court a stipulation whereby they agreed that "for reasons of efficiency and expediency, they [would] perform an accounting between themselves and convey the property to the plaintiff without the need to unnecessarily incur attorney's fees and costs associated with filing a foreclosure action and holding a foreclosure sale." The stipulation provided that Clay would have no duty to convey the property to Kinghorn unless she paid all debts owed within six months of the close of the accounting. It also provided that the parties would file cross-motions for summary judgment regarding the claims they asserted in the accounting. Upon the cross-motions for summary judgment, the district court held that Kinghorn owed Clay $22,235.33.

BRP moved for an award of the costs and fees incurred in enforcing its warranty deed against Clay. The district court held that Clay owed BRP $2,691 in attorney fees relating to its cross-claim and $30,000 in attorney fees relating to Clay's failure to defend under the warranty deed. The court subsequently entered judgment ordering Clay to pay BRP those amounts in addition to damages in the amount of $31,408.96. BRP filed a petition for writ of attachment pursuant to I.C. § 8-501. The petition referenced the stipulation executed by Clay and Kinghorn as well as the property at the center of this dispute, and asserted that:

> In the event that the Payment [required by Clay and Kinghorn's stipulation] is not made, BRP is entitled to attach the Property to secure the debt owed to BRP by Clay. In the event the Payment is made to Clay by Kinghorn, BRP is entitled to the entirety of such sums and this Court should prohibit any conveyance of the Property to Kinghorn without the Payment being directed to BRP.

The district court subsequently entered an order providing that Kinghorn must pay Clay $22,235.33 by a date certain or Clay would have no duty to convey the property to Kinghorn. Thereafter, Clay's attorney, Brian Smith (Smith), filed a motion to perfect attorney fees lien in the amount of $22,235.33, if Kinghorn elected to pay Clay, or $33,413.25 (the full value of Clay's legal services), if Clay retained ownership of the real property. Smith simultaneously filed a memorandum of attorney's fees, as well as a brief in opposition to BRP's petition for writ of attachment, contending that the attorney fees lien held first priority. Smith also argued that the party prevailing upon entry of a final judgment must enforce its rights by executing the judgment, not by writ of attachment.

At the hearing on BRP's petition for writ of attachment and Smith's motion to perfect attorney fees lien, Kinghorn presented a check for $22,235.33 in order to redeem the property. The court ordered that the check be deposited with the clerk of court to be held in trust pending resolution of the writ of attachment and lien perfection issues.

The district court's subsequent opinion cited *Kenneth White, Chtd. v. St. Alphonsus Regional Medical Center*, 136 Idaho 238, 241, 31 P.3d 926, 929 (Ct. App. 2001), for the proposition that "[t]he plain language of [I.C. § 3-205] makes the commencement of an action or service of a counterclaim a prerequisite for the creation of an attorney's charging lien." As Clay had not commenced the action nor had he served a counterclaim, the district court held that Smith was not entitled to a charging lien. The court then ordered that the check held in trust be disbursed to BRP in partial satisfaction of its judgment against Clay.

Smith, acting in his own behalf,[2] has appealed the district court's order refusing to recognize his attorney charging lien. Clay has not appealed. BRP requests attorney fees on appeal.

---

[2] Smith's Notice of Appeal states:
1. Counsel for the above-named defendant, Bryan D. Smith, Esq. of Smith Driscoll & Associates, PLLC ("Smith") appeals to the Idaho Supreme Court from the Seventh Judicial District Court's Order entered September 1, 2010, in the above-entitled action against Smith and in favor of the above-named defendants/respondents….
2. Smith has the right to appeal to the Idaho Supreme Court, and the judgment described in paragraph one above is subject to appeal pursuant to Idaho Appellate Rule 11(a).
…
4. Idaho Appellate Rule 11 provides that Smith has the right to appeal the above-identified Order to the Supreme Court.

Paragraph 1 of Smith's Amended Notice of Appeal clarifies that the order from which he appeals is the district court's "Opinion, Decision, And Order On Attorney Bryan Smith's Motion To Perfect Attorney's Fees Lien against Smith … entered September 1, 2010 and the Rule 54(b) certificate dated October 25, 2010…."

## II. STANDARD OF REVIEW

We review questions of law de novo. *Karle v. Visser*, 141 Idaho 804, 806, 118 P.3d 136, 138 (2005) (citing *State, Dep't of Health & Welfare v. Housel,* 140 Idaho 96, 100, 90 P.3d 321, 325 (2004)).

## III. ANALYSIS

**A. We dismiss this appeal because Smith is not a party to the action.**

This Court may raise jurisdictional issues sua sponte. *Bagley v. Thomason*, 149 Idaho 799, 804, 241 P.3d 972, 977 (2010). Standing is a jurisdictional issue. *Arambarri v. Armstrong*, 152 Idaho 734, ___, 274 P.3d 1249, 1253 (2012) (citing *Hawkins v. Bonneville Cnty. Bd. of Comm'rs*, 151 Idaho 228, 231, 254 P.3d 1224, 1227 (2011)). The Idaho Appellate Rules authorize an appeal by "[any] party aggrieved by an appealable judgment, order or decree . . . of a district court . . . ." I.A.R. 4.

In *First State Bank of Eldorado v. Rowe*, 142 Idaho 608, 612, 130 P.3d 1146, 1150 (2006), this Court discussed a purported party's standing to pursue an appeal, observing: "A 'party aggrieved' has been defined 'as any party injuriously affected by the judgment.' *Fed. Land Bank of Spokane v. Parsons,* 116 Idaho 545, 548, 777 P.2d 1218, 1221 (Ct. App. 1989) (citing *Roosma v. Moots,* 62 Idaho 450, 112 P.2d 1000 (1941))." Thus, in order to have the right to appeal, one must satisfy two requirements: first, one must be a party, and second, one must be "aggrieved." There is no doubt but that Smith is aggrieved, as he has been "injuriously affected" by the district court's refusal to recognize his claimed lien.[3] The impediment to this appeal is his lack of party status.

The citation to *Roosma* is important, because there this Court squarely addressed what is necessary to be considered a party to an appeal. *Roosma* considered an appeal from a motion to modify a child custody decree. Custody of the child was initially awarded jointly to Father and

---

[3] We note that the Court of Appeals has held that a client may not advance its attorney's interests in an appeal, because the client was not the aggrieved party. In *State v. Abracadabra Bail Bonds*, 131 Idaho 113, 952 P.2d 1249 (Ct. App. 1998), the court stated:

> Abracadabra claims the district court erred in fining Abracadabra's attorney for filing repetitive motions. The state asserts that because the district court's order fining Abracadabra's attorney was personal to the attorney, Abracadabra is not entitled to appeal this issue because Abracadabra was not aggrieved by the district court's order. We agree. Abracadabra has not established that it is an aggrieved party as required under I.A.R. 4. Thus, we will not address this issue.

*Id*. at 120-21, 1256-57 (footnote omitted).

the maternal grandmother. *Id*. at 453, 112 P.2d at 1001. After the grandmother removed the child from the state, Father sought to have the decree modified to award him sole custody of the child. *Id*. The trial court modified the decree, awarding sole custody of the child to the maternal grandmother and Father appealed. *Id*. at 454, 112 P.2d at 1001. Mother cross-appealed, but did not serve a copy of the notice upon the grandmother. *Id*. Father sought to dismiss Mother's cross-appeal based upon the statute which then governed appeals, which required service of the notice on "the adverse party." *Id*.

The Court denied Father's motion to dismiss. *Id*. at 455, 112 P.2d at 1002. The Court explained:

> In the instant proceeding [maternal grandmother] was not a party, nor was she brought in by order or any process of the court, nor did she seek the custody of [child] by petition or otherwise. Hence, she would not be bound nor prejudicially affected by any order or judgment entered in the controversy. [Maternal grandmother] was and is a stranger to this litigation. … Surely the mere appointment as custodian of a minor child could not make such custodian an "adverse party" within the meaning of Section 11-202, *supra*. In *Walker v. Jackson*, 48 Idaho 18, 25, 279 P. 293 [(1929)], we held that one who never appeared nor was brought into trial court was not an adverse party required to be served with notice of appeal under C.S. § 7153 (now Section 11-202, *supra*), since not being a party to the action, one could not be affected by the proceedings, or by any reversal or modification of the judgment on appeal.

*Id*. at 454-55, 112 P.2d at 1001-02.

Although the Idaho Appellate Rules have subsequently been adopted, this reasoning continues to be applicable. Despite the fact that those rules do not define the term "party" in appeals arising from civil actions, it is evident that "party" status is defined by the proceedings below. Idaho Appellate Rule 6 provides: "The original title of an action or proceeding, with the names of the parties in the same order, shall be retained on appeal by adding the designations of 'appellant' and 'respondent.'" The Idaho Rules of Civil Procedure clearly provide that "party" status is limited to those persons by or against whom a civil action is asserted. *See* I.R.C.P. 3(a) (complaining party may commence civil action by filing a complaint, petition, or application that designates the adverse party); I.R.C.P. 3(b) (providing the types of information necessary to designate parties); I.R.C.P. 13(h), 19, 20 & 24(a) (providing for the joinder of additional parties).

In the present case, the pleadings before the district court identify the parties to the action as plaintiff Kinghorn and defendants Clay, BRP, and the bank. Although Smith appeared as

counsel for Clay, Smith did not seek to intervene in the proceedings below. Rather, Smith's first attempt to assert an interest in the outcome of the litigation came when, in his own name, he filed a motion for an order to perfect attorney fees lien. Smith has not sought to be formally recognized as a party to this appeal.[4] Because Smith is not a party to this appeal, his appeal must be dismissed.[5]

We acknowledge that earlier decisions from this Court have held that an attorney may seek perfection of an attorney's lien within the same action as the one from which the claim of lien arises. *See Dahlstrom v. Featherstone*, 18 Idaho 179, 110 P. 243 (1910); *Renfro v. Nixon*, 55 Idaho 532, 45 P.2d 595 (1935); *Skelton v. Spencer*, 102 Idaho 69, 625 P.2d 1072 (1981). However, given the plain language of I.A.R. 4, an attorney who seeks to participate in an appeal in order to advance his or her personal interests with regard to a claimed charging lien, whether as an appellant or a respondent, must become a party in order to have standing. Thus, only an

---

[4] Idaho Appellate Rule 7.1 provides a mechanism by which a person interested in appellate proceedings may participate, provided that a party to the proceedings below has initiated the appeal. The Rule provides:

> Any person or entity who is a real party in interest to an appeal or proceeding governed by these rules or whose interest would be affected by the outcome of an appeal or proceeding under these rules may file a verified petition with the Supreme Court asking for leave to intervene as a party to the appeal or proceeding and serve a copy thereof upon all parties to the appeal or proceeding.

We note that Smith has not sought to intervene in this appeal only as reinforcement for our conclusion that Smith has taken no steps whatsoever to achieve party status. We express doubt that a would-be party would be permitted to intervene in an appeal when no party to the litigation has appealed.

[5] Although we acknowledge that the following statement is dicta, we think it worth noting that our decision to dismiss this appeal has no practical effect upon the outcome for Smith. If this appeal were not dismissed due to Smith's lack of standing, he would not prevail on the merits. The plain language of I.C. § 3-205 provides that an attorney's charging lien is only available where the attorney's client commences an action or files a counterclaim. Since this Court is bound by legislative intent, we look to the plain language of I.C. § 3-205:

> . . . From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come; and can not be affected by any settlement between the parties before or after judgment.

As the trial court correctly held, the statute plainly "makes the commencement of an action or service of a counterclaim a prerequisite for the creation of an attorney's charging lien." *Kenneth White, Chtd. v. St. Alphonsus Reg'l Med. Ctr.*, 136 Idaho 238, 241, 81 P.3d 926, 929 (Ct. App. 2001). Certainly "[t]his Court may not ignore or amend unambiguous statutes; rather, policy arguments for altering unambiguous statutes must be advanced before the legislature." *Rogers v. Household Life Ins. Co.*, 150 Idaho 735, 739, 250 P.3d 786, 790 (2011) (citing Idaho Const. art. III, § 1; *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 313, 208 P.3d 289, 295 (2009)). As the Court recently stated in *Verska v. St. Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 896, 265 P.3d 502, 509 (2011), "'[t]he public policy of legislative enactments cannot be questioned by the courts and avoided simply because the courts might not agree with the public policy so announced.'" (Quoting *State v. Village of Garden City*, 74 Idaho 513, 525, 265 P.2d 328, 334 (1953)). While Clay indeed may have had a cause of action against Kinghorn for breach of the loan agreement, Clay did not commence an action or assert a counterclaim against Kinghorn in order to recover damages caused by that breach. Therefore I.C. § 3-205 provides no authority whereby Smith would be entitled to an attorney's charging lien.

7

attorney who has filed a separate action or who has successfully intervened in the existing action may subsequently assert an appeal.[6] To the extent that our earlier decisions, specifically *Renfro v. Nixon* and *Skelton v. Spencer* suggest otherwise, they are overruled.

Since Clay is not a party to this appeal and Smith has no interest in the outcome of a decision on the subject, we do not address the validity of BRP's writ of attachment.

**B. BRP is not entitled to attorney fees on appeal.**

Smith requests costs pursuant to I.A.R. 40(a). Since Smith has not prevailed on appeal, he is not entitled to costs on appeal.

BRP requests attorney fees on appeal pursuant to I.C. § 12-121. "[A]ttorney fees under section 12–121, Idaho Code, may be awarded by the court . . . [if] the case was brought, pursued or defended frivolously, unreasonably, or without foundation . . . ." I.R.C.P. 54(e)(1). Although Smith lacked standing to assert an appeal, language in some of this Court's precedent suggested otherwise. Since the issue of Smith's standing was not plainly resolved by existing law, we hold that Smith's appeal was not frivolous and BRP is not entitled to attorney fees on appeal.

## IV. CONCLUSION

We dismiss this appeal. Costs, but not attorney fees, to BRP.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.

---

[6] Idaho Rule of Civil Procedure 24 provides the mechanism by which a person may intervene in an existing civil action. Although Rule 24 does not expressly state that one granted permission to intervene becomes a party to the action, this Court has long so held. *See Gold Hunter Mining & Smelting Co. v. Holleman*, 3 Idaho 99, 102, 27 P. 413, 414 (1891).

Although an attorney may intervene in the underlying action, there may be ethical constraints upon the ability to do so. An attorney's assertion of a claim of charging lien may well be directly adverse to the interests of his or her client, especially if the amount of fees due is uncertain. Because of this inherent conflict of interests, an attorney wishing to intervene in the underlying action may well have to withdraw from representation of the client.