**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40267**

| | | |
|---|---|---|
| **PAUL WILLIAM DRIGGERS,** | ) | **2013 Unpublished Opinion No. 746** |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Filed: November 8, 2013** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **KAREN N. VASSALLO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Respondent.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. Carl B. Kerrick, District Judge; Hon. Benjamin R. Simpson, Magistrate.

Decision of district court on intermediate appeal affirming magistrate court order disallowing discovery, <u>vacated</u> and <u>remanded</u>; district court decision remanding for further consideration of custody order governing communication with children, <u>affirmed</u>.

Paul William Driggers, Arizona, pro se appellant.

Karen N. Vassallo, Coeur d'Alene, respondent, did not participate on appeal.

LANSING, Judge

Paul William Driggers appeals the decision of the district court that affirmed in part and remanded in part orders of the magistrate court in a child custody matter.  Driggers argues that the magistrate court erred by impermissibly limiting his discovery and his communication with his children.

**I.**

**BACKGROUND**

By his own admission, Driggers is currently serving a sentence in federal prison as a result of his conviction for the use of interstate facilities in the attempt to commit a murder for

1

hire, felony, 18 U.S.C. § 1958.[1]  The intended victim of Driggers' crime was Karen Vassallo, Driggers' ex-wife and mother to his children.  Since at least 2004, Driggers has sought custody of his children through various means.[2]  The current appeal stems from an oral stipulation entered on the record on July 8, 2008.  At that time, Driggers was in prison but was opposing Vassallo's petition to obtain sole legal and physical custody.  After the court addressed a multitude of Driggers' pretrial motions, the court held a status conference during which it asked Driggers if he wanted to proceed to trial or would be willing to stipulate to some custody arrangement until he was released from prison.  He agreed to an oral stipulation that primarily concerned custody but also addressed Driggers' right to communicate with his children by letter.  Based on the stipulation, the court granted Vassallo full legal and physical custody of the children.  With regard to communication between Driggers and his children, the court stated that it was not aware of any order that prohibited contact and had "no problem with [Driggers] writing letters to the children," but that it wanted a third party to act as an intermediary to determine whether the letters were appropriate for the children to see.  This intermediary was used to prevent Driggers and Vassallo from disputing which letters should be delivered to the children.  The parties then agreed to use the Idaho Department of Health and Welfare as an intermediary because there was a pending child protection action initiated by the Department.  The Department was to both screen the letters and deliver them to the mother because another court had ordered that Driggers was not to be told Vassallo's address.  The magistrate court issued an order accordingly.

In November 2008, Driggers complained that he was being denied the right to communicate with his children.  At the hearing, Vassallo indicated that she did not wish to communicate with Driggers and did not want any communication between Driggers and the

---

[1]  Driggers continues to assert his innocence in the briefing and argued that various courts have misinterpreted the exact contents of his charge.  Because the exact charge is not relevant to the disposition of the appeal, we adopt Driggers' description of the offense.

[2]  Driggers requested that certain documents from his prior appeals be included in the record of this appeal.  These documents do not appear to constitute the entire records of each matter before the trial courts.  However, from a review of those records, it appears Driggers previously attempted to obtain custody of his children by (perhaps illegally) removing them from one state and hiding them from their mother and, later, by obtaining a custody decree by fraudulent means.

children.  Construing Driggers' motions and requests as either a motion under Idaho Rule of Civil Procedure 60 or a motion to reconsider, the magistrate court did not alter its order but described the duties of each party under the terms of the order:  the intermediary would determine if any letter from Driggers to his children was appropriate, and if it was appropriate, Vassallo was to deliver the letter to the child.  However, no party was ordered to certify to Driggers that his letter was found to be inappropriate or delivered.[3]

By April 1, 2010, Driggers had obtained counsel and, through counsel, petitioned to modify the child custody and visitation decree.  Driggers argued the prior decree was no longer workable because the child protection case had ended, the Idaho Department of Health and Welfare was no longer involved with the family, and the Department was unwilling to serve as a screener for his letters.  He also argued that because his status in prison had changed so as to permit him to make telephone calls and to send e-mail, he should be permitted to use those means to communicate with his children.  Finally, he requested joint legal custody of the children.  It appears that Vassallo did not promptly respond to the petition and avoided default only by attending the hearing on the matter.

A hearing was conducted on February 8, 2011, at which Driggers' attorney offered several suggested means of permitting communication between Driggers and his children.[4]  She suggested several possible intermediaries to replace the Department such as a guardian ad litem or one of the children's counselors if such a person existed.  The magistrate then held that Vassallo had unfettered discretion to determine which letters were appropriate because she had full legal custody and that, absent a finding she was an unfit parent, the court would be obligated

---

[3]     From the limited record before the Court, it appears that Driggers attempted to appeal either the original ruling in the magistrate court or the decision on his motion to reconsider, but his appeals were dismissed.  His appeal to the district court was filed on January 16, 2009, and his appeal from the district court to the Idaho Supreme Court was filed on April 6, 2009.  Both appeals were dismissed.  It appears that the district court dismissed Driggers' appeal on timeliness grounds, and the basis of the Supreme Court dismissal does not appear in the record.  Driggers apparently took an additional appeal in 2009 that was dismissed by both the district court and by the Idaho Supreme Court because Driggers attempted to take an appeal from a nonappealable decision.

[4]     Based on statements at the hearing, it appears that after the Department declined to continue to receive and screen Driggers' letters, the court arranged for Driggers to send letters to the children through the clerk of the court, but Driggers did not attempt to use that intermediary.

to presume that her decision was correct. Driggers, through counsel, argued that such a ruling was inconsistent with the original stipulated agreement and that Driggers had some right to communication with his children regardless of the fact that Vassallo had sole legal custody. He also argued that the only means to terminate his right to contact his children was a termination of parental rights.

At the same hearing, Vassallo discussed how communication had operated under the decree as it stood. She stated that she had, from time to time, asked her children if they wished to send a letter to Driggers, and each child declined. She also stated that she had never received any letter from Driggers through the Department because the Department deemed each letter inappropriate.

Finally, the court considered Driggers' efforts to conduct discovery. In the magistrate's oral discussion of the case, it raised several factors. First, the court said that its decision to deny Driggers' motion to modify the custody decree left no pending matters before the court upon which Driggers could seek discovery. Second, the court appears to have taken the view that Driggers' continued filing of baseless motions and other behavior in the case amounted to harassment. This factor was not clearly addressed as the pending motions were primarily brought by Driggers' counsel and there is no indication they were improper or harassing. Rather, the court commended counsel for being tactful and careful. In any case, the court was very concerned by the possibility of harassment given Driggers' criminal history and a report from Vassallo that Driggers had once again attempted to have his wife killed, this time from inside the prison. Thereafter, in its written decision, the magistrate court appears to have denied Driggers access to discovery solely upon the grounds that he had no physical or legal custody and thus no right to discovery.

Driggers took an appeal from this decision to the district court. Driggers had counsel at that time and raised four arguments as to why the magistrate court's decisions were in error: Driggers asserted that he has a Fourteenth Amendment right to maintain a familial relationship, which was violated; that his parental rights were not terminated and that imprisonment is not *per se* grounds for terminating his rights; that he had a right to discovery not only as a procedure to develop certain legal claims but to discern the status of his children; and that Vassallo's sole legal custody did not terminate Driggers' right to communicate with his children either by law or by the express terms of the stipulated agreement.

4

The district court addressed two issues. First, it considered whether the magistrate erred by finding that there was no substantial change in circumstances and consequently did not reopen the custody matter. Second, it addressed whether the magistrate erred in denying Driggers' request to conduct discovery. The district court concluded that Driggers was not entitled to a modification of a custody decree unless he could show a material, permanent, and substantial change in circumstances. It then determined that the magistrate court failed to adequately consider whether such a change had occurred when the Department became unavailable as an intermediary. On this basis, the district court remanded the case to the magistrate court for a determination of whether such a change existed. As to the discovery issue, the district court held that the magistrate court did not abuse its discretion.

On appeal to this Court, Driggers raises many issues. We view these as falling within five broad categories.[5] First, Driggers asserts that the courts below have ignored the express terms of the stipulated agreement, which set forth a specific means for Driggers to communicate with his children. Driggers argues that the original order did not contemplate using Vassallo as the gatekeeper of his communications with his children and that permitting her to act as a gatekeeper denies his fundamental right to parent. He argues that Vassallo's statement that she would prevent him from communicating with her children shows that she is not fit to fairly determine whether his communications should be shown to the children.[6] Likewise, Driggers

---

[5] Driggers' briefing at times makes factual allegations that are clearly contradicted by his prior statements. For example, he now claims that the magistrate's statement granting Vassallo "sole legal sole physical custody" is ambiguous. He asserts that the magistrate misspoke originally when he said "sole legal custody" and corrected himself when he said "sole physical custody." In the alternative, he argues the phrase means that Vassallo was to have sole physical custody in a way that was legally sanctioned. His present claim of confusion is controverted by his prior purportedly sworn statement that "the parties agree[d] that [Vassallo] would have sole legal and physical custody of [the children]." Likewise, Driggers vacillates in his claims regarding the severity of Vassallo's mental illness, at times arguing she is not a competent parent and at other times stating that mental illness does not render her an incompetent parent.

[6] Driggers also argues, at length, that Vassallo has impermissibly poisoned the relationship between him and the children. In support of this claim, Driggers cites to a brief purportedly submitted by Vassallo. The quoted section contains written statements purportedly by the children regarding letters they received from Driggers in which the children expressed revulsion at the communication. In these quotations, the children recall being physically assaulted by Driggers and do not appear to have any fond memories of their father. Driggers argues this is evidence of Vassallo's scheme. Driggers falls well short of demonstrating that these letters are

argues that a change in the party reviewing his letters for appropriateness is a material and substantial change in circumstances that warrants the reopening of his case.

Second, Driggers contends that the magistrate erred by disallowing discovery on the ground that Driggers does not presently have legal custody. He argues that if this were the law, it would be impossible for a parent who lost custody to ever obtain custody because that parent would lack the information needed to prosecute his case. Additionally, he argues that the rules of civil procedure govern discovery and were not properly applied in his case.

Third, Driggers argues that his parental rights were constructively terminated and that this constructive termination was done without basis and without proper procedures being followed.[7] He bases this argument, in part, upon an assertion that imprisonment does not automatically result in the termination of parental rights. In the same vein, Driggers asserts that his parental rights include a right to information regarding the well-being of his children.

Fourth, Driggers challenges the 2008 decision by the magistrate court on a jurisdictional basis. Driggers appears to assert that he can continue this claim because it is part of an attack on the jurisdiction of that court that has been ongoing since 2008.

Finally, Driggers argues that forcing him to have his case heard at the magistrate court level on remand from the district court would prejudice him. He asserts, without any citation or reference to the record, that the magistrate is biased against him. Second, he argues that remand causes delay and therefore prejudice. In part, these arguments are based upon his perception that he has continuously attacked the original 2008 decision for the past five years.

---

the result of Vassallo's manipulations rather than the honest recollection of children who, for their own reasons, find their father or his behavior contemptible. We do not review this issue because it does not appear to have been raised below. Furthermore, the sources Driggers cites are not in our record.

[7]     Driggers is correct that his parental rights have not been terminated. Although it appears that his parental rights might be subject to termination pursuant to I.C. § 16-2005(1)(e) or I.C. § 16-2005(2)(b)(iv), no action for termination has been brought.

6

## II.

## ANALYSIS

**A.    The Magistrate Court Had Jurisdiction**

Because a lack of jurisdiction would be dispositive, we review that issue first.  Driggers argues that the trial court lacked jurisdiction to impose the terms of the 2008 order.  The time to appeal the 2008 order has long since passed and Driggers' repeated appeals challenging that decision have been dismissed by the district court and the Idaho Supreme Court on at least two prior occasions.  His argument that he can challenge that order in this case because his attack is jurisdictional is meritless.  Driggers essentially asserts that later courts have not properly interpreted the 2008 order and claims this divests the court of personal and subject matter jurisdiction.

That claim is not jurisdictional but simply a claim of judicial error.  As we said in *State v. Armstrong*, 146 Idaho 372, 375, 195 P.3d 731, 734 (Ct. App. 2008), the "precise use of the term 'jurisdiction' refers only to either personal jurisdiction over the parties or subject matter jurisdiction."  In that case, we cautioned against using the word "jurisdiction" more loosely "to refer simply to a court's authority to take a certain action or grant a certain type of relief . . . when [the parties] really mean simply that the court committed error because the action that was taken did not comply with governing law."  *Id*.  Here, Driggers complains that the later construction of the order is erroneous.  As we stated in *Armstrong*, that is not a jurisdictional challenge.  The subject matter jurisdiction of the magistrate over the divorce and child custody issues is set forth in I.R.C.P. 82(c)(2).  For all of these reasons, Driggers' "jurisdictional" challenge fails.  Moreover, it is clear that the trial court had jurisdiction.  The trial court obtained personal jurisdiction over Driggers when he filed this action.  Even if Driggers ever could have raised the defense of personal jurisdiction as a plaintiff, he waived any objection to personal jurisdiction by voluntarily appearing at the hearings and failing to raise this issue promptly.  *See, e.g.*, *Dragotoiu v. Dragotoiu*, 133 Idaho 644, 647, 991 P.2d 369, 372 (Ct. App. 1998).

**B.    The Permissible Scope of Driggers' Appeal**

We next consider the permissible scope of Driggers' claims on appeal.  The district court held that the magistrate did not properly determine whether there had been a material, permanent, and substantial change in circumstances sufficient to reopen the custody matter, and the district court remanded for the magistrate court to address that issue.  By so doing, the district

7

court implicitly agreed with Driggers' assertion that he retained certain parental rights. This portion of the district court's decision on appeal was in Driggers' favor.

Idaho Appellate Rule 4 limits the parties who may take an appeal to "[a]ny party aggrieved by an appealable judgment, order or decree." Thus, "in order to have the right to appeal, one must satisfy two requirements: first, one must be a party, and second, one must be 'aggrieved.'" *Kinghorn v. Clay*, 153 Idaho 462, 465, 283 P.3d 779, 782 (2012). Driggers is a party, but has not been aggrieved by the district court's disposition of this claim of error.

We have previously determined whether a party is aggrieved by asking whether a party was "injuriously affected" by the decision of the lower court. *Id.* Although it appears that Driggers was aggrieved by the district court decision regarding discovery, that does not mean that he can appeal other components of the district court's decision that were not adverse to Driggers. In *Abolafia v. Reeves*, 152 Idaho 898, 903, 277 P.3d 345, 350 (2012), the Idaho Supreme Court held that a party was not "an aggrieved party because as to those issues [the party was] not injuriously affected by the judgment of the district court." As to the main issue in this appeal--whether the custody dispute should have been reopened and what manner of custody decree should be entered--Driggers was not aggrieved by the district court's decision. To the extent Driggers claims that the district court erred because remand to the magistrate court for further proceedings was an improper remedy, he is mistaken. A factual determination of whether there has been material change in circumstances is required before reaching the other custody modification issues. *Evans v. Sayler*, 151 Idaho 223, 226, 254 P.3d 1219, 1222 (2011). The district court remanded the case back to the magistrate court for factual findings because the fact-finding or analysis of the magistrate was insufficient. Neither this Court nor the district court sitting in its appellate capacity can make this factual finding. Accordingly, a remand was the appropriate remedy.

Nor has Driggers shown that the remand is prejudicial. His first claim of prejudice is that the magistrate is biased against him. That is not a basis for holding a remand to be prejudicial. On remand, if Driggers thinks the magistrate assigned to the case is biased against him, he can bring a motion to disqualify for cause pursuant to I.R.C.P. 40(d)(2). The magistrate can then, after notice and a hearing, determine whether he is biased or not. Driggers' prejudice argument is no more than an attempt to circumvent the provisions of I.R.C.P. 40(d)(2). His second contention--that he will be prejudiced because a remand will cause delay--is also without merit.

First, as explained above, a factual finding is required before this Court or any other appellate court could address other issues. A remand to the trial court is the only way to obtain that factual finding. Second, Driggers' proposed alternative, a trial *de novo*, would require further delay and therefore would not mitigate any possible delay. Accordingly, the district court's decision, favorable to Driggers, on Driggers' claim that there has been a substantial change in circumstances is affirmed.[8]

## C. Driggers' Request for Discovery

The magistrate court held that Driggers "cannot conduct discovery in this matter, as he does not have any custody rights to his children while he is incarcerated." In its appellate capacity, the district court held that the magistrate had discretion to control discovery and that the magistrate did not abuse its discretion by denying discovery.

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

The magistrate issued a written decision concerning discovery, holding that Driggers was not entitled to discovery because he had no custody rights as to his children. It thus appears that the magistrate court did not perceive the issue as discretionary, but applied what it apparently viewed to be a *per se* rule. We know of no statute, rule, or precedent that completely bars a noncustodial parent from conducting discovery. Rather, a noncustodial parent seeking a change in an existing custody order must prove that there has been a "material, permanent and substantial change in conditions," *Evans*, 151 Idaho at 225, 254 P.3d at 1221. In some circumstances, discovery may be reasonable and necessary in order to meet this burden. Accordingly, we are constrained to hold that the magistrate court erred when it held that Driggers, as a noncustodial parent, may never conduct discovery.

---

[8] This disposition also covers Driggers' contention that the trial court essentially terminated his parental rights. This argument is nothing more than the recasting of his claim that the trial court erred in deciding the custody issues. Accordingly, if the custody issue should be remanded, the constructive termination issue must also be remanded.

That is not to say, however, that Driggers is *entitled* to discovery. The magistrate court will have considerable discretion to control discovery. Idaho Rule of Civil Procedure 26(c) authorizes the court to issue protective orders to protect the parties "from annoyance, embarrassment, oppression, or undue burden or expense. Rule 26(f) specifies that signing a discovery request thereby certifies that the signer believes that the discovery request is warranted and not interposed for any improper purpose, such as to harass the other party and is not unduly burdensome or expensive; and if such certification is made in violation of the rule, the court may, upon motion or upon its own initiative, impose an appropriate sanction.

### III.

### CONCLUSION

To the extent Driggers claims that the district court erred by remanding the case for further consideration by the magistrate of Driggers' motion to modify the custody decree regarding communications with his children, we affirm the district court's decision. We also hold the discovery issue must be remanded to the magistrate court for further proceedings consistent with this opinion. Therefore, we vacate the district court's decision regarding discovery and remand accordingly.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**