# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48371

| | | |
|---|---|---|
| In the Interest of: Jane Doe I and John Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) | Filed: January 26, 2021 |
| | ) | |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| | ) | |
| v. | ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JANE DOE (2020-41), | ) ) | BE CITED AS AUTHORITY |
| | ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Andrew Ellis, Magistrate.

Order terminating parental rights, affirmed.

Anthony R. Geddes, Ada County Public Defender; Karen L. Jennings, Deputy Ada County Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John R. Shackelford, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights, arguing the court erred by denying John Doe's motion to continue, finding that she neglected her children, and finding it is in the children's best interests to terminate her parental rights. Because Jane Doe has not established she is an aggrieved party, we decline to address her challenge to the denial of John Doe's motion to continue. Further, because the record contains substantial and competent evidence to support the magistrate court's finding that Jane Doe neglected her children and that terminating Jane Doe's parental rights is in the best interests of the children, the magistrate court's judgment terminating Jane Doe's parental rights is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe is the mother of S.C. and O.C. In May 2019, Jane Doe left S.C. unattended in a bathtub filled with approximately six inches of water. After about thirty minutes, a toddler alerted the adults that S.C. was submerged underwater and unresponsive. Another adult pulled S.C. from the water, paramedics were called to the home, and S.C. was taken to the intensive care unit at a local hospital where she ultimately recovered. As a result, S.C. was placed in the temporary custody of the Department of Health and Welfare (Department) and thereafter, was placed in foster care; Jane Doe was arrested and charged with felony injury to child.

Approximately one month after being taken into custody, Jane Doe was transported from jail to the local hospital where she gave birth to O.C. O.C. was born with significant medical issues. O.C. was also placed in the temporary custody of the Department and thereafter, in foster care. After an adjudicatory hearing, the magistrate court awarded custody of S.C. and O.C. to the Department and approved a case plan for Jane Doe.

Jane Doe pleaded guilty to one count of felony injury to a child. In January 2020, Jane Doe was sentenced to a unified term of incarceration of ten years, with two years determinate, and was released on supervised probation for ten years. The district court issued a no contact order (NCO) prohibiting Jane Doe from having contact with any minor child, including S.C. and O.C., until January 2030, except for supervised visits at the Department.

The Department petitioned to terminate Jane and John Does' parental rights and a termination trial was held. At the beginning of the trial, John Doe filed a motion to continue the termination trial, which was denied. Following the trial, the magistrate court found by clear and convincing evidence that Jane Doe neglected her children, was unable to discharge her parental responsibilities, and that termination of her parental rights is in the best interests of the children. Jane Doe timely appeals.

# II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable

inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Jane Doe argues the magistrate court's decision to terminate her parental rights should be reversed. Jane Doe claims the magistrate court erred in denying John Doe's motion to continue. Jane Doe also asserts that the magistrate court erred when it found that she neglected her children and that it is in the children's best interests to terminate her parental rights.

**A.    Jane Doe Cannot Establish She Was an Aggrieved Party as a Result of the Magistrate Court's Denial of John Doe's Motion to Continue**

Although Jane Doe challenges the denial of John Doe's motion to continue, she cannot establish she was an aggrieved party. This Court may sua sponte address jurisdictional issues like standing. *Kinghorn v. Clay*, 153 Idaho 462, 465, 283 P.3d 779, 782 (2012). Idaho Appellate Rule 4 limits the parties who may take an appeal to "[a]ny party aggrieved by an appealable judgment, order or decree." Thus, "in order to have the right to appeal, one must satisfy two requirements: first, one must be a party, and second, one must be 'aggrieved.'" *Kinghorn*, 153 Idaho at 465, 283 at 782. A "party aggrieved" is defined as "any party injuriously affected by the judgment." *Id.* "'Party' status is defined by the proceedings below." *Id.* at 466, 283 P.3d at 783.

Even if Jane Doe was a party to John Doe's motion to continue, she has not shown she was injuriously affected by the magistrate court's denial of the motion.[1] Jane Doe asserts that if

---

[1]    Although Jane Doe and John Doe were part of a single case before the magistrate court, Jane Doe's status as a party alongside John Doe does not necessarily determine her ability to challenge the magistrate court's denial of the motion to continue. The motion to continue was filed solely by John Doe. Jane Doe was not listed as a party to the motion, did not file her own

the motion had been granted, John Doe may have been able to reunify with the children, which would have given Jane Doe grounds to modify her NCO to allow John Doe to supervise visitation until it became appropriate for Jane Doe to move to quash the NCO. Jane Doe further contends that if John Doe's parental rights had not been terminated, there would have been little reason to terminate her parental rights and, therefore, her fundamental rights were prejudiced by the denial of the motion to continue. These conclusory assertions are erroneous and unsupported by the record.

Jane Doe's claims are a series of conditional statements that are far too speculative to demonstrate Jane Doe is an aggrieved party. Courts are permitted to terminate one parent's parental rights while leaving the other's intact. I.C. § 16-2010(2)(b). The evidence in the record indicates that John and Jane Doe were no longer residing together by the time of the termination trial and were seeking a divorce. Moreover, nothing in the record establishes that (1) had the motion to continue been granted, John Doe would have completed his case plan or been reunified with S.C. and O.C.; (2) the termination of Jane Doe's parental rights was linked to the termination of John Doe's parental rights; or (3) John Doe's reunification with the children would have had any effect on Jane Doe's parental rights.

Instead, the magistrate court terminated Jane Doe's parental rights on three different bases: (1) Jane Doe's neglect of her children pursuant to I.C. § 16-2005(1)(b) for failing to provide proper parental care and control; (2) Jane Doe's neglect of her children pursuant to I.C. § 16-2005(1)(b) for failing to complete her case plan; and (3) her inability to discharge parental responsibilities pursuant to I.C. § 16-2005(1)(d). The magistrate court's determination that Jane Doe was unable to discharge her parental responsibilities was due only in part to the NCO prohibiting her from having contact with her children other than supervised visits at the Department. These grounds were completely separate from any issues relating to John Doe's reunification with the children or lack thereof. Because Jane Doe's allegation of injury is speculative and unsupported by the evidence, she has not demonstrated that she was injuriously affected by the magistrate court's denial of John Doe's motion to continue, and cannot be considered an aggrieved party. Accordingly, we will not consider the issue on appeal.

---

motion to continue, and there is no indication she joined in John Doe's motion. For example, at the hearing on the motion, Jane Doe did not take a position in favor or against John Doe's motion.

**B.    The Magistrate Court Did Not Err When It Found Doe Neglected Her Children**

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court terminated Jane Doe's parental rights on three different bases: (1) Jane Doe's neglect of her children pursuant to I.C. §§ 16-2005(1)(b), -1602(31)(a) for failing to provide proper parental care and control; (2) Jane Doe's neglect of her children pursuant to I.C. §§ 16-2005(1)(b), -2002(3)(b) for failing to complete her case plan; and (3) her inability to discharge parental responsibilities pursuant to I.C. § 16-2005(1)(d). Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because

5

of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

On appeal, Jane Doe challenges the magistrate court's conclusion that she did not comply with her case plan, arguing that she "substantially complied." This argument acknowledges that Jane Doe did not complete her case plan. Additionally, Jane Doe does not challenge the magistrate court's additional basis for finding neglect, which was Jane Doe's failure to provide proper care and control, nor does she challenge the magistrate court's decision to terminate her parental rights based on its alternative finding that she was unable to discharge her parental responsibilities pursuant to I.C. § 16-2005(1)(d).

If the court grants a judgment on more than one independent basis and the appellant does not challenge each basis for termination, then we must affirm the judgment. *Idaho Dept. of Health and Welfare v. Doe*, 163 Idaho 707, 711, 418 P.3d 1216, 1220 (2016). Here, the magistrate court terminated Jane Doe's parental rights on alternative grounds of neglect, as well as her inability to discharge her parental responsibilities. Because Jane Doe only challenges the termination of her parental rights based on the finding of neglect due to failure to comply with her case plan, we must affirm the judgment on the unchallenged grounds: that Jane Doe neglected her children by failing to provide proper care and control and that Jane Doe was unable to discharge her parental responsibilities.

Even if we were not required to affirm on the grounds of neglect by failing to provide proper care and control and inability to discharge parental responsibilities, the magistrate court's finding that Jane Doe neglected her children by failing to comply with her case plan is supported by substantial and competent evidence.

Jane Doe's case plan required her to obtain a mental health evaluation and follow all treatment recommendations pertaining to the safety and well-being of her children, obtain a substance abuse evaluation and treatment, attend visitation and parenting classes, provide financial support and stable housing for the children, and engage in family and individual

6

counseling. The magistrate court found that, overall, Jane Doe failed to comply with her court-ordered case plan.

For example, the magistrate court found that Jane Doe only completed one task out of the entirety of her case plan: obtaining a substance abuse evaluation. Jane Doe substantially complied with this task but failed to comply with any other task in her case plan. Jane Doe completed some form of a mental health evaluation to gain admission to Ada County Mental Health Court, however, the evaluation was not completed by a Department approved provider and it was unknown if the evaluation focused on cognition as required by the case plan. Jane Doe did not maintain compliance with her psychotropic medications, and her mental health deteriorated significantly following her release from jail.

Although Doe visited with her children once a week via video teleconferencing while she was incarcerated, she struggled to maintain their attention during video calls. After her release, Jane Doe began in-person visits with her children, but she was not engaged with her children during those visits; during one visit Jane Doe was under the influence of medication and fell asleep. When visitation transitioned back to video teleconferencing due to COVID-19, Jane Doe attended, at most, three video visits with her children, the final visit being in May 2020. In August 2020, Jane Doe contacted her social worker about resuming visits. The social worker attempted to facilitate supervised in-person visits between Jane Doe and her children, but was unable to contact Jane Doe despite multiple attempts. Jane Doe did not attend any of her children's medical appointments and failed to maintain contact with any of their service providers. As a result, Jane Doe did not progress past supervised visits with her children. Based on this and Jane Doe's lack of progress in other areas of her case plan, no referral was made to family preservation services.

Although Jane Doe self-reported securing employment in spring of 2020, she provided no proof of employment to the Department. Jane Doe had no legal income other than her social security disability income. Between January 2020 and July 2020, Jane Doe resided in an apartment with John Doe. Law enforcement was called on four occasions to resolve domestic disputes involving Jane Doe and John Doe. Following the fourth domestic dispute, Jane Doe's probation officer ordered her to leave the apartment and reside in a homeless shelter. Jane Doe briefly resided at a local homeless shelter before moving into a home with a registered sex-offender. Jane Doe's probation officer required her to move back to the shelter, which she

7

did for several days, but then moved to an unknown location. Jane Doe's exact residence on the date of the termination trial was unknown, but her probation officer had photographic evidence that she was staying with a fellow probationer who was a registered sex-offender.

Although Jane Doe made some efforts relating to the tasks in her case plan, Jane Doe completed only one of the tasks assigned. The magistrate court found that Jane Doe had the ability to comply with her case plan but failed to do so. Substantial and competent evidence supports the magistrate court's conclusion. Thus, the magistrate court's conclusion that Jane Doe neglected her children by failing to complete the case plan is affirmed, as is the magistrate court's finding that Doe neglected her children by failing to exercise proper care and control and that Doe was unable to discharge her parental responsibilities.

## C. The Magistrate Court Did Not Err When It Found Termination Is in the Best Interests of Doe's Children

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the children to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the children's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the children's care after the children are placed in protective custody, the improvement of the children while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the children to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

By the end of the termination trial, S.C. had been in the Department's care for sixteen months. O.C. had been in the Department's care for all of his fifteen months. When S.C. was first placed in the care of the Department, she had abnormally long temper tantrums, often triggered by transitions during the day, and would become inconsolable. Her speech was limited and she refused to allow any physical affection. In August 2020, S.C. and O.C. were moved to a potential pre-adoptive home. The frequency of S.C.'s tantrums decreased significantly, and she is able to manage transitions without emotional distress. S.C. entered speech therapy which improved her vocabulary, and she now welcomes physical affection.

8

Since his placement in foster care, O.C.'s muscle tone has progressed and he is an active, happy child. He regularly sees a neurologist and receives physical and occupational therapy. While the long-term effects of O.C.'s physical condition are unknown, he will need therapeutic attention from a diligent caregiver throughout his childhood and will likely require care into adulthood. Both children are bonded with their pre-adoptive parents and do not express that they miss Jane Doe.

Since the children were removed to the care of the Department, Jane Doe did not seek out information about either child's physical health conditions and failed to maintain regular contact with her children. Jane Doe did not take responsibility for her actions that nearly resulted in S.C.'s death and the trauma it caused S.C. Jane Doe also failed to acknowledge the significant needs of O.C. due to his medical condition.

The magistrate court found that both children have special emotional, mental, and physical health needs that Jane Doe is unable to support. The magistrate court further found that Jane Doe's untreated mental health concerns impact every aspect of her life and it would be detrimental to the children to remain in foster care for the indefinite period of time it would take Jane Doe to address her mental health concerns. These findings are supported by substantial and competent evidence.

Additionally, Jane Doe has an NCO prohibiting her from having unsupervised contact with her children for the next ten years. The magistrate court found that the NCO rendered Jane Doe unavailable to parent her children. Jane Doe contends that her NCO should not be used as significant reasoning regarding reunification with her children because the NCO is subject to modification. Jane Doe provides no argument or authority in support of this claim. Moreover, it is unclear if Jane Doe is arguing the district court erred in considering the NCO when determining she was unable to discharge her parental duties or when determining whether termination is in the best interests of the children. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018).

The magistrate court found that Jane Doe was unable to achieve stability for herself and, therefore, could not provide stability for her children. Jane Doe did not demonstrate her ability to provide for the basic daily needs of her children. There is no evidence to suggest the NCO

9

was the source of Jane Doe's inability to provide the necessary stability for her children or engage in any of the treatment or educational courses that would provide Jane Doe with the educational information she needed to safely parent her children. Because the magistrate court's findings are supported by substantial and competent evidence, the magistrate court's conclusion that terminating Jane Doe's parental rights is in the best interests of the children is affirmed.

## IV.

## CONCLUSION

Jane Doe cannot establish she was injuriously affected by the magistrate court's denial of John Doe's motion to continue. The magistrate court's finding that Jane Doe neglected her children by failing to complete her case plan is supported by substantial and competent evidence. Jane Doe did not challenge the magistrate court's finding that she neglected her children by failing to provide proper care and control or that she was unable to discharge her parental responsibilities. The magistrate court's conclusion that terminating Jane Doe's parental rights is in the children's best interests is supported by substantial and competent evidence. Accordingly, we affirm the magistrate court's judgment terminating Jane Doe's parental rights.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.

10